Hillsborough,
No. 4503.

DUNBAR FUEL CO., INC. & a.

*v.*

CHARLES A. CASSIDY & a.

Argued December 4, 1956.

Decided January 31, 1957.

*Wyman, Starr, Booth, Wadleigh & Langdell, Philip G. Peters*
and *Charles J. Dunn* (*Mr. Peters* and *Mr. Dunn* orally), for Dunbar
Fuel Co., Inc. and Massachusetts Bonding & Insurance Co.

*Broderick, Manning & Sullivan* (*Mr. Broderick* orally), for
Charles A. Cassidy.

*Devine & Millimet* (*Mr. Millimet* and *Mr. Shane Devine* orally),
for Fellows & Son, Inc. and Lumbermen's Mutual Casualty Co.

GOODNOW, J. The employee in this case suffered two compensable
injuries, the first in the course of his employment by Dunbar Fuel
Co., Inc. and the second while employed by Fellows & Son, Inc.,
both of which, as found by the Court, contributed to cause his now
permanent partial disability. The exceptions of the latter company
present the issue of whether the full amount of compensation to
which the employee is now entitled is to be paid by it as the
employer at the time of the most recent injury bearing causal
relation to the disability or is to be apportioned between the
two employers.

Ordinarily when an accidental personal injury, compensable
under the workmen's compensation law, aggravates or renders

disabling a pre-existing physical condition, the employer is required to pay the full amount of compensation to which the employee is entitled because of the resulting disability without regard to the extent to which the pre-existing condition contributed to the disability. *Walter* v. *Hagianis*, 97 N. H. 314, 317, and cases cited. It does not follow, however, that when an earlier compensable injury for which another employer is responsible causes a condition which is a pre-existing and contributing cause of further disability resulting from a second injury there should be no apportionment of compensation between the two employers.

Our compensation law contains no specific provision for apportionment between successive employers. It does, however, impose responsibility on each employer for disability caused by "accidental injury . . . arising out of and in the course of the employment" (RSA 281:2 III), whether the employee becomes disabled at the time of the accident or at some time thereafter. See *Davis* v. *Manchester*, 100 N. H. 335; *Desrosiers* v. *Company*, 97 N. H. 525. Subject to the applicable statutory limitations such as notice (Laws 1947, c. 266, s. 15, at the time of the first accident in this case, now RSA 281:17) and maximum benefits (Laws 1947, c. 266, s. 28 at the time of the first accident, now RSA 281:30) the responsibility of the employer at the time of the first injury, if that injury does not result in permanent partial disability (see RSA 281:47), continues as to future disabilities which may result from it. It follows that if injuries suffered in more than one employment each contribute to a disability, the burden of compensation is to fall upon each responsible employer to the extent of his respective liability imposed by the law.

Since an award under our law is for "disability for work resulting from an injury" (RSA 281:23, 25) an apportionment of compensation cannot be arbitrarily made in equal amounts between the responsible employers as was done in *Anderson* v. *Babcock & Wilcox Co.*, 256 N. Y. 146, but compensation must be awarded against each responsible employer according to his statutory liability. Within the limits of that liability, each employer is required to provide compensation, not in the full amount for which he would be liable if he were the only employer but only for so much thereof as represents the proportion of the whole disability which is attributable to the injury sustained in his service. See *Denver Producing & Refining Co.* v. *Phillips*, 163 Okla. 106. Since awards were not made in this manner by the Superior Court the

case must be remanded. Upon further hearing in the Superior Court, the question of the extent to which the injury incurred in the employ of Dunbar Fuel Co., Inc. contributed to the employee's disability, raised by the motion of Fellows & Son, Inc. filed in this court after argument, may be considered and action upon that motion here becomes unnecessary.

The Massachusetts rule placing full liability upon the employer at the time of the "more recent injury bearing a causal relation to the disability" (*Fitzpatrick's Case*, 331 Mass. 298, 300) relied on by Dunbar Fuel Co., Inc. is based upon the requirement in that state that the "insurer . . . compensate him . . . for incapacity resulting from . . . injury received during the period covered by the policy" (*Evan's Case*, 299 Mass. 435, 436) and is not applicable under our law.

If it is deemed that the administration of the law would be more practical if full responsibility for compensation were placed upon the last employer as is done in Massachusetts or that the burden should be divided arbitrarily on an equal basis between the employers responsible for the disability as is done in many states, the determination must be made by the Legislature.

Dunbar Fuel Co., Inc. contends that the present proceedings against it, commenced on June 3, 1952, are in effect an application under RSA 281:40 for modification of an award made by agreement under section 36, that they were not brought within one year after the last payment fixed by that award and are therefore barred by the provisions of section 40. It is unnecessary to decide whether such is the case because the company never raised this question before the Trial Court and the Commissioner "retained jurisdiction of the original application." *Cassidy* v. *Company*, 98 N. H. 441, 446.

There remains for consideration the Court's denial of Cassidy's claim for compensation under Laws 1947, c. 266, s. 23 (now RSA 281:25 and hereafter referred to as section 25), which permits an award for partial disability for not exceeding three hundred weeks on the basis of a fixed percentage "of the difference between his average weekly wage before the injury and the average weekly wage which he is able to earn thereafter." The award of the Court was made under the provisions of Laws 1951, c. 75, s. 1 I, XX (now RSA 281:26 I, XX and hereafter referred to as section 26 I, XX) which limits the payments for a 25% permanent partial loss of use of an arm to a period of forty-two and one-half weeks

at two-thirds of the employee's average weekly wage before the accident. If Cassidy was entitled to an award under section 25 and such an award would have been larger than one made under section 26 I, XX as it existed at the time of the second accident, he is entitled to the larger award by the terms of Laws 1949, c. 152, s. 3 (now RSA 281:27). It is his position that the Trial Court erred in denying his claim under section 25. With this contention we must agree.

Cassidy was entitled to compensation from Fellows & Son, Inc. under section 25 if his average weekly wage before his second accident was greater than the average weekly wage which he was able to earn "in suitable work under normal employment conditions" (*Desrosiers* v. *Company*, 98 N. H. 424, 427) after that accident with the disability of his left arm. Similarly he was entitled to compensation from Dunbar Fuel Co., Inc. under section 25 if his average weekly wage before his first accident was greater than the average weekly wage he was able to earn after his second accident. The Trial Court found that an award under section 25 "*would* result in a larger award than obtainable under section [26]" (emphasis supplied), that such an award "requires a finding as to the extent of the disability as it affects his ability to earn" and concluded that "any attempt . . . to determine his lack of earning capacity would be based on pure conjecture. An award under section [26] can be made and supported by evidence." As we understand these rulings, they were applicable only to Fellows & Son, Inc. and it was the decision of the Court that Cassidy's earning capacity after the second accident with one partially disabled arm was sufficiently less than his average wage before that accident to make an award under section 25 greater than one made under section 26 but that the claim under section 25 must be denied because a computation of the difference would be a matter of conjecture, as contrasted with an award under section 26 based on the medical evidence in support of a 25% disability of the arm. Cassidy's requests for rulings of law seeking consideration, on the question of earning capacity, of his inability to "now perform a laborer's work" and to "compete in the labor market under normal conditions with others with two sound arms for . . . laborer's jobs" were denied. In so denying the claim and the employee's requests, the Court appears to have applied too limited a rule of proof as to earning capacity after injury.

Earning capacity after injury cannot be determined solely on the basis of direct and positive testimony but requires, "within the limits established by the statute, the exercise of judicial discretion." *Desrosiers* v. *Company*, 97 N. H. 525, 531. In this connection, actual earnings after injury are not conclusive of but merely an evidentiary aid in determining earning capacity at that time. *Peak* v. *Company*, 87 N. H. 350, 353. Similarly, although the fact that the employee is disabled in the medical sense does not entitle him to compensation under section 25 "unless it produces a loss in earning capacity" (*Desrosiers* v. *Company*, 98 N. H. 424, 426), it may be considered in determining what the earning capacity after injury is. If that capacity includes a capacity in callings other than the occupation or trade in which the employee was working at the time of the accident, it is to be considered (*Desrosiers* v. *Company*, 98 N. H. 424, 427); if it includes no such other capacity but is limited, in comparison with its extent before injury, by the employee's inability to secure employment under normal employment conditions, that fact is also to be considered.

There appears to be no question that the employee in this case was thirty-four years of age in March 1952, that he completed the sixth grade in school and has always been a laborer on unskilled manual jobs. Prior to his first accident, he had the full use of both of his arms and was earning $38 per week. As found by the Court, he now has a "25% permanent partial disability in the use of his left arm" due to limitation of motion in external rotation of the shoulder. Taking these facts into account together with those found concerning Cassidy's ability to hold a pipe over his head and to shovel, the Court had a sufficient basis for forming an opinion as to his earning capacity after injury.

It is generally known that under normal employment conditions, the ability to obtain work and hence the earning capacity of one whose capabilities are limited to unskilled manual labor will be affected if the use of either of his arms is impaired. An estimate of earning capacity with such a disability is not made conjectural because direct evidence concerning it is not introduced. "In some degree general knowledge is also available as a basis of reasonable forecast." *Vallee* v. *Company*, 89 N. H. 285, 289. The Trial Court determined the general fact that Cassidy's earning capacity after his second accident was less than his average weekly wage before his first accident and that an award of compensation under section 25 would exceed one made under section 26. Therefore it should

have exercised its discretion, on the basis of the evidence before it, in fixing an amount representative of that capacity and awarded compensation under section 25.

*Remanded.*

All concurred.