Submitted January 27, reversed February 22, 1977

HOLDEN, *Respondent,*
*v.*
WILLAMETTE INDUSTRIES, INC., *Appellant.*
(No. 46511, CA 7441)
560 P2d 298

Philip A. Mongrain, Beaverton, filed the brief for appellant.

No appearance for respondent.

Before Schwab, Chief Judge, and Tanzer and Johnson, Judges.

TANZER, J.

JOHNSON, J., specially concurring opinion.

## TANZER, J.

Claimant has suffered a significant hearing loss. The issue is whether his last employer is liable for compensation. The hearing officer and Workmen's Compensation Board denied compensation, the circuit court reversed, ordering compensation, and the employer appeals.

Claimant's father suffered a slight hearing loss in his early fifties. Claimant, 32 at the time he filed his claim, had been exposed in the Army to artillery noise without noticeable effect on his hearing. Thereafter, claimant was employed in various lumber industry jobs in which he was exposed to loud noise.

Claimant testified that he first noticed a hearing problem in 1961 or 1963 while working in the woods, exposed to noise, for another company. In 1964 or 1965 he worked on another job for six months setting chokers behind a Cat, also a noisy situation.

In 1965, claimant first went to work for Wimer Logging Company (Wimer), a subsidiary of the appellant, where he continued until August, 1970. He ran a power saw eight hours a day and the noise from it and other machinery was constant. He noticed ringing in his ears for three or four hours each evening after he returned from work. He then worked for Weyerhaeuser Lumber Company (Weyerhaeuser) from August, 1970, until April, 1971, when he returned to Wimer. Both jobs involved similar work and noise.

Claimant testified that in early 1970, perhaps February or March, Wimer had claimant's hearing tested. The result is neither in evidence nor referred to in the audiological reports. Sometime in the spring of 1970, Wimer muffled its machinery and issued earplugs to its employes. He further testified that the plugs were effective in reducing noise perception and he noticed no depreciation of his hearing thereafter. No such equipment was used or issued to him during his interim employment by Weyerhaeuser.

Audiologocal examinations were given in November, 1970, and again in March and November, 1974. There was no significant difference in hearing loss between the earlier and later tests.

The inferences are clear. Claimant, though perhaps congenitally susceptible, suffered hearing loss which we infer, as the parties have assumed throughout, to have been caused by noise exposure on the job. Degeneration of his hearing occurred during periods of exposure while he was not protected, but was either arrested or in abeyance in early 1970 when claimant was issued earplugs.

On July 3, 1973, claimant filed his report of injury, alleging a high frequency hearing loss due to noise exposure while employed at Wimer. The employer's first defense is that the claim is void as untimely. ORS 656.807(1) then provided:

> "Except as otherwise limited for silicosis, all occupational disease claims shall be void unless a claim is filed with the State Accident Insurance Fund or direct responsibility employer within three years after the last exposure in employment subject to the workmen's compensation law and within 180 days from the date the claimant becomes disabled or is informed by a physician that he is suffering from an occupational disease whichever is later."[1]

A statutory amendment, effective October 5, 1973, three months after claimant's filing of his notice, enlarged the limitation from three to five years. Oregon Laws 1973, ch 543, § 3.

The employer argues that the three-year limitation is controlling because it was in effect at the time of the filing. Because it had eliminated deleterious noise exposure in early 1970, and because ORS 656.807(1) makes void any claim arising from a last exposure occurring prior to three years before the filing, i.e.,

---

[1]The 180-day clause is not here in issue.

July 3, 1970, the employer argues that there can be no valid claim against it.

The first issue, therefore, is the effect of an enlargement of a limitation upon those claims arising from events occurring prior to the former period of limitation and within the amended limitation. The employer argues that the three-year limitation applies because the claim was filed while the old statute was still in effect.

In *State ex rel Huntington v. Sulmonetti,* 276 Or 967, 557 P2d 641 (1976), the Supreme Court gave the benefit of a change in a similar workmen's compensation limitation, ORS 656.319, to a claimant whose first claim for the same injury had already been decided adversely to him as untimely under the previous version of the statute. The court held that he was entitled to press a second claim under the new form of the statute. The court reasoned:

> "It is our belief that had the legislature considered a situation such as that presently before us, it nevertheless would have worded the statute broadly enough to permit an individual in the present claimant's position to file a second time. While different treatment *could* have been afforded those claims which had been litigated and held untimely under the law then in existence, as compared with those which had not been filed at all, we do not believe that such different treatment *would* have been afforded by the legislature had it considered the problem. It is unlikely that it would have wanted to open the door to previously injured workmen for whom the time for filing had elapsed under the prior law but who had never filed a claim, and yet not wanted to open the door to claimant, who had at least been diligent enough to file a claim, albeit too late. *Cf. Wagner v. Baron,* 64 So2d 267, 268, 37 ALR2d 831, 833 (Fla 1953). The legislature probably would not have intended claimant to be in a worse position than those who did not file claims at all, despite the prior expense which the court system and the employer incurred in litigating the timeliness of the claim previously filed." (original emphasis.) 276 Or at 970-971.

[ 617 ]

In this case, the amendment became effective before the initial claim had been adjudicated. The reasoning in *Huntington* is all the more persuasive where no issue of res judicata or procedural duplication is presented.

Here, the amendment did not include a retroactivity clause, as did the act in *Huntington.* The act is silent in this regard. Parallel to the reasoning in *Huntington,* we do not believe that the legislature intended that a workman who filed an occupational disease claim in July, 1973, would be denied relief, but that if he had with less diligence filed the same claim three months or more thereafter, it would be valid. Such a result would elevate procedural nicety beyond substantive purpose.

The most fundamental reason to extend the limitation, however, is that the most apt application of the policy of the law that the Workmen's Compensation Act is to be liberally construed for the benefit of the worker, is to the construction of a statute which is silent or ambiguous as to its retroactive effect upon workers' claims. Therefore, we construe the amended version of ORS 656.807(1) to allow consideration of claims filed within five years of last exposure which existed on October 5, 1968, or thereafter.[2]

The employer's second defense is that Weyerhaeuser, not Wimer, should be held liable under *Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972), wherein we held that where an occupational disease is caused by a succession of jobs, each of which provides exposure of a nature which causes the disease, then the last employer with risk exposure is liable for compensation, even though the last employment may have been of short duration. The purpose in adopting the rule is to free the claimant from the burden of assigning or allocating[3] responsibility where it is

---

[2] *See also Bebout v. SAIF,* 22 Or App 1, 537 P2d 563, *aff'd* 273 Or 487, 541 P2d 1293 (1975).

[3] *See Davidson Baking v. Industrial Indemn.,* 20 Or App 508, 532 P2d 810, *rev den* (1975).

difficult or impossible to determine which similar employment actually generated the disease that later caused disability.

This case illustrates how typically difficult allocation or assignment of causal responsibility can be. Claimant testified that the conditions at Wimer and at Weyerhaeuser were the same:

"Q. Did you do the same kind of work for Weyerhaeuser as you had been doing for Wimer?
"A. Yes.
"Q. Working on the landing?
"A. Yes.
"Q. Same type of operation?
"A. Yes.
"Q. Any essential difference?
"A. No."

The timing of the audiological tests proves only that claimant's hearing had stabilized prior to November, 1970, seven months after he returned to work for Wimer. The results of the examination of February or March, 1970, are not in evidence. There is no way to intelligently determine whether claimant's condition had stabilized by the time of Wimer's precautions in early 1970 or whether it further deteriorated due to the noise exposure at Weyerhaeuser. *Mathis* provides a workable rule. Rather than require proof of the unprovable and litigation of the unlitigable, *Mathis* places responsibility for the entire compensation upon the last employer whose conditions of employment are of a nature which are likely to cause the disease.

The *Mathis* rule is particularly harmonious with the policy of liberal construction for the worker in that it is adopted in part to minimize the barring of claims by the limitation statute by allowing the claimant to look to the most recent employer for compensation. In this unusual case, the rule fails to work to the benefit of the worker, unless he has also claimed against Weyerhaeuser. The rule should work both ways, however, and to qualify or depart from it would be to

generate undesirable and needless uncertainty as to liability in future cases. Therefore we adhere to our holding in *Mathis.*

Reversed.

**JOHNSON, J.,** specially concurring.

I concur with the opinion that the last employer is liable for the compensation where an occupational disease is caused by a succession of jobs. For that reason it is unnecessary to reach a decision on the first defense concerning the statute of limitations.