CONNIE L. OSTEEN, WIDOW OF ALBERT S. OSTEEN, ET AL., APPELLEES, V.
A. C. AND S., INC., ET AL., APPELLEES,
PETER KIEWIT SONS' COMPANY, APPELLANT.

307 N.W.2d 514

Filed June 26, 1981.   No. 43692.

Holtorf, Kovarik, Nuttleman & Ellison, P.C., and James M. Mathis and M. J. Javoronok for appellant.

Michael Kelley of Kelley & Kelley for appellee Osteen.

Neil W. Schilke, P.C., of Sidner, Svoboda, Schilke, Wiseman & Thomsen for appellee Vaughn Insulation.

Michael P. Cavel of Sodoro, Johnson, Daly, Stave, Cavel & Coffee for appellee Taylor Insulation.

Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellee Johns-Manville.

Barlow, Johnson, DeMars & Flodman for appellee

Inseco, Inc., Central Insulation & Engineering Co., and Thermal Products, Inc.

Norman H. Wright of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., and Theodore J. Stouffer of Cassem, Tierney, Adams, Gotch & Douglas for appellee Owens-Corning Fiberglas Corp.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Appellant, Peter Kiewit Sons' Company, appeals from an award on rehearing by the Nebraska Workmen's Compensation Court awarding compensation based on Neb. Rev. Stat. §§ 48-101 et seq. (Reissue 1978) to appellee, Connie L. Osteen, surviving spouse of Albert S. Osteen. Mr. Osteen died on March 18, 1977, of peritoneal mesothelioma, a rare form of abdominal cancer caused by exposure to asbestos particles. Mr. Osteen was a member of Insulators and Asbestos Workers Local 39 and worked as an insulator from 1941 until a few weeks prior to his death. His employment was by the "union hall" method wherein an employer contacts the union agent requesting workers for a particular job, and the agent then assigns available workers to the requested job. Mr. Osteen worked for many employers during his years as an insulator and appellee brought her claim against approximately 40 of these employers, including appellant. After a hearing before the one-judge Workmen's Compensation Court, the court found that mesothelioma was an occupational disease and, therefore, appellee was entitled to compensation under Neb. Rev. Stat. § 48-122 (Reissue 1978) in the amount of $100 per week, the amount to be divided between appellee and the then minor child, Mark, until Mark reached his majority. Thereafter, appellee would receive $100 per week for the remainder of her widowhood. Applying the so-called "last injurious exposure" rule, Judge Paul E. LeClair ordered Vaughn Insulation to pay the entire award. On rehearing, the

three-judge Workmen's Compensation Court affirmed the award in all respects except that it ordered appellant, Kiewit, to pay the entire award. Appellant assigns numerous errors. We affirm.

Appellant first argues that appellee's claim is barred by the statute of limitations which was in effect at the time Mr. Osteen was employed by Kiewit in 1974 and 1975. Those limitations, appearing at Neb. Rev. Stat. §§ 48-133 and 48-137 (Reissue 1968), bar claims for compensation not filed within 6 months of the occurrence of an injury or within 6 months after death and suits for compensation not filed within 1 year after the accident. In 1977 the statutes were changed to provide that notice of a claim to an employer be given "as soon as practicable after the happening thereof" and for a 2-year time limit on filing suits for compensation. §§ 48-133 and 48-137 (Reissue 1978).

Apparently, appellant is urging that the Workmen's Compensation Court's finding that appellant is liable amounts to a finding that Mr. Osteen's "injury" occurred while he was employed by Kiewit and, thus, the claim was not filed within 6 months of the "injury" since notice was not given of a claim until June 24, 1977. However, as will be more fully developed elsewhere in this opinion, the rule under which appellant was found liable is applied in cases where the onset of the occupational disease cannot be pinpointed as stemming from a distinct incident and, thus, the finding of liability by the lower court is not a finding that Mr. Osteen's "injury" occurred while he was in Kiewit's employ for statute of limitation purposes. The correct interpretation of the statute of limitations to be applied in this case appears in *Hauff v. Kimball*, 163 Neb. 55, 61, 77 N.W.2d 683, 687 (1956): "'Where an occupational disease results from the continual absorption of small quantities of some deleterious substance from the environment of the employment over a considerable period of time, an afflicted employee can be held to be "injured" only when the accumulated effects of the

substance manifest themselves, which is when the employee becomes disabled and entitled to compensation; and the "date of injury," within the meaning of the Workmen's Compensation Act, is the date when the disability is first incurred, and the . . . period of limitations runs from that date . . . .' "

On February 1, 1977, Mr. Osteen ceased working and entered the hospital for diagnosis of an abdominal disorder. Cancer was subsequently discovered during surgery and Mr. Osteen died on March 18, 1977. An autopsy on that date disclosed that the cause of death was peritoneal mesothelioma, and claimant first became aware that the cause of death was employment related. Notice was given on June 24, 1977, and the petition was filed in the Workmen's Compensation Court on January 27, 1978. The earliest date upon which we could hold that the disease manifested itself in disability was February 1, 1977. Using that date as the "date of injury," it is plain that claimant gave notice and filed her petition within the statutory time limits.

Appellant next argues that there is no competent medical evidence that peritoneal mesothelioma is a compensable occupational disease under the Nebraska Workmen's Compensation Act. According to Neb. Rev. Stat. § 48-151 (Reissue 1978), "[t]he term occupational disease shall mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment and shall exclude all ordinary diseases of life to which the general public are exposed." The Workmen's Compensation Court found that peritoneal mesothelioma is a compensable occupational disease, and its findings of fact have the force and effect of a jury verdict and will not be set aside unless clearly wrong. *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980).

The evidence demonstrates that the incidence of peritoneal mesothelioma is almost negligible in the population at large, but approaches 7 percent in

asbestos workers. According to one of appellee's expert medical witnesses, the incidence of this disease in the population in general "is very, very small, so small that it's hard to put a number on it. A number that you commonly see in the scientific literature is perhaps one in 10,000 deaths may be due to mesothelioma in the general population. But even that number, it's kind of a guess, because the incidence is so low." However, a study cited by the same witness, in which initially healthy asbestos workers were "followed" by researchers "to see what happened to them," found that approximately 7 percent eventually died of mesothelioma. Conversely, several studies which traced the employment history of men who had died of mesothelioma found that between 60 percent and 80 percent of those decedents had a history of prolonged exposure to asbestos in their employment. We find that there is sufficient competent medical evidence to support the Workmen's Compensation Court's finding that peritoneal mesothelioma is a compensable occupational disease.

Appellant next argues that the Workmen's Compensation Court erred in applying the so-called "last injurious exposure" rule to determine which employer should bear liability for payment of the award. According to this rule, where a worker has contracted an occupational disease by exposure to a harmful substance over a period of years in the course of successive employments, the employer who most recently exposed the worker to the harmful substance is liable to pay the entire award. 4 Larson, Workmen's Compensation Law § 95.21 (1981). In some states, this rule is codified by statute. See, *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181 (Iowa 1980); *Stanley v. Hinchliffe*, 395 Mich. 645, 238 N.W.2d 13 (1976). A number of jurisdictions follow this rule even in the absence of statute. See, *Holden v. Willamette Industries., Inc.*, 28 Or. App. 613, 560 P.2d 298 (1977); *Duaine Brown Chevrolet Co. v. Industrial Com'n*, 29 Utah 2d 478, 511 P.2d 743 (1973);

*Bond v. Rose Ribbon & Carbon Mfg. Co.*, 42 N.J. 308, 200 A.2d 322 (1964). Nebraska has no statute stating rules for determining liability in the successive employer situation, so the issue is one of first impression in this state.

The alternative to imposing liability based upon the last injurious exposure would be to somehow apportion liability among all the employers who exposed Mr. Osteen to asbestos. This would involve devising a formula based upon some factor, such as length of exposure, severity of exposure, degree of aggravation of the first harmful exposure, wage rates, or any of a multitude of factors which could be utilized. We think if apportionment is to be the rule in Nebraska, the factor upon which it is to be based is necessarily the type of policy decision best left to the Legislature.

Although occasionally courts have applied the apportionment rule in the absence of statute, those cases which have done so have presented a situation involving successive separate, identifiable injuries, with one occurring during the claimant's employment with a prior employer and an aggravating injury occurring during a subsequent employment. See, *United Painters & Decorators v. Britton*, 301 F.2d 560 (D.C. Cir. 1962); *Dunbar Fuel Co. v. Cassidy*, 100 N.H. 397, 128 A.2d 904 (1957); *Quinn v. Automatic Sprinkler Co.*, 50 N.J. Super. 468, 142 A.2d 655 (1958); *Goetz v. Bulk Commodity Carriers*, 303 Minn. 197, 226 N.W.2d 888 (1975). We are aware of no cases in which a court has, in the absence of legislation, apportioned liability for a progressive occupational disease in which neither the onset of the disease nor the degree of aggravation by subsequent exposures can be accurately determined. Having no legislative guidance in the matter, we thus affirm the lower court's application of the "last injurious exposure" rule for the reasons set out below.

As noted above, there is no doubt that the disease which caused Mr. Osteen's death is an occupational disease which afflicts asbestos workers. However, it is

almost impossible to pinpoint which exposure "caused" the disease, since the claimant's expert medical witnesses agreed that no exposure to asbestos could be exonerated as the cause of the tumor. Thus, we are unable to assign liability to the employer whose exposure of Mr. Osteen to asbestos "caused" his occupational disease, since the inception of the disease cannot be pinpointed and, additionally, since it is believed that cumulative exposures are harmful as well. The application of the last injurious exposure rule eliminates this guesswork. As stated in *Tennessee Tufting Co. v. Potter*, 206 Tenn. 620, 630, 337 S.W.2d 601, 602 (1960), a case from a state where this rule is statutory, the purpose of the rule is "to avoid the issue when the disease or disability came into existence, which issue often involves difficulty, uncertainty and speculation."

In *Alloy Surfaces Company v. Cicamore*, 221 A.2d 480 (Del. 1966), the claimant employee suffered severe mouth and gum infection and lost all his teeth due to exposure to chrome compounds in his work. The Delaware court noted: "The present case is a good example of a situation where qualified specialists cannot trace the history of a disease with any satisfactory degree of certainty; the most they could say was that its development was a matter of months or years. It would indeed be a hardship to place that burden of proof upon the employee . . . ." *Id.* at 486. In the absence of statute, that court adopted the last injurious exposure rule, stating: "If the majority rule placing responsibility upon the last carrier, which we are now accepting as the law of this State, be deemed unjust, the remedy lies with the General Assembly." *Id.* at 487.

A reminder of the root purpose of workmen's compensation legislation appears in *Wilson v. Van Buren County*, 198 Tenn. 179, 186, 278 S.W.2d 685, 688 (1955): "[W]e are constrained to so interpret our Workmen's Compensation Law as will best serve the interests of employees who suffer from an occupational disease, rather than attempt an adjustment of their rights in the

light of equities that may exist between [successive employers]."

*Holden v. Willamette Industries, Inc.*, 28 Or. App. 613, 560 P.2d 298, 301 (1977), found that the last injurious exposure rule is "particularly harmonious with the policy of liberal construction for the worker . . . ." The policy of liberal construction of the Workmen's Compensation Act for the benefit of the claimant is likewise the rule in Nebraska. *Wilson v. Brown-McDonald Co.*, 134 Neb. 211, 278 N.W. 254 (1938).

Under the last injurious exposure rule, it is not always the case that the last employer of the claimant will be the one which produced the last injurious exposure. As stated in 4 Larson, Workmen's Compensation Law § 95.21 at 17-79 (1981): "In the case of occupational disease, liability is most frequently assigned to the carrier who was on the risk when the disease resulted in disability, *if the employment at the time of disability was of a kind contributing to the disease.*" (Emphasis supplied.) Thus, in the case where a claimant was not being exposed to the harmful substance by his employer at the time the disease manifested itself in disability, the procedure is as stated in *Underwriters at Lloyds, London v. Alaska Indus. Bd.*, 160 F. Supp. 248, 250 (D. Alaska 1958): "Rather than defeat the claim of the employee where the employment at the time of disability was not of a kind contributing to the disease, the employer at the time of the most recent exposure which bears a causal relation to the disability is generally liable for the entire compensation."

The last injurious exposure, to be "injurious," must indeed bear a causal relationship to the disease. Howsation Law § 95.21 at 17-79 (1918): "In the case of that the exposure must be *of the type which could* cause the disease, given prolonged exposure. As described in *Mathis v. State Accident Insurance Fund*, 10 Or. App. 139, 499 P.2d 1331 (1972), an exposure which will support imposition of liability under this rule need not

be proved to have been a "material contributing cause" of the disease. Indeed, to so require would bring the employee back to Square One by requiring "proof of the unprovable and litigation of the unlitigable." *Holden v. Willamette Industries, Inc., supra* at 301. As Larson notes at 17-87: "[O]nce the requirement of some contributing exposure has been met, courts . . . will not go on to weigh the relative amount or duration of the exposure under various employers . . . . As a result, in some cases carriers and employers that have been on the risk for relatively brief periods, perhaps only a few weeks, have nevertheless been charged with full liability for a condition that had developed over a number of years." As noted by the Workmen's Compensation Court in its opinion and award on rehearing in this case: "[E]ven though liability imposed under this rule can have a harsh result, there will be a spreading of the risk when the total picture of asbestos litigation is considered and this rule is applied on a nationwide basis."

The Workmen's Compensation Court found that the evidence showed that the last injurious exposure of Mr. Osteen to asbestos fibers occurred while he was in the employ of the appellant. Coworkers of Mr. Osteen on the Kiewit job testified that on that job Mr. Osteen worked for several days, possibly as long as 3 weeks, with old insulation and products which contained asbestos. Claimant's expert medical witness testified that, in his opinion within a reasonable medical certainty, mesothelioma can occur within a lesser latency period than 5 years and that an exposure of less than 1 month could be causally related to the subsequent development of mesothelioma. In determining the sufficiency of evidence necessary to sustain an award of the Nebraska Workmen's Compensation Court after rehearing, such evidence must be considered most favorably to the successful party, every controverted fact must be resolved in his or her favor, and he or she must receive the benefit of every inference reasonably

deducible from it. *McCann v. Holy Sepulchre Cemetery Assn.*, 205 Neb. 444, 288 N.W.2d 45 (1980). We find there is sufficient evidence in the record to support the lower court's finding that the last injurious exposure occurred while Mr. Osteen was employed by appellant.

Appellant next claims that appellee's award should be limited to $89 per week, which was the statutory maximum compensation rate in effect at the time Mr. Osteen was employed by Kiewit. Neb. Rev. Stat. § 48-122 (Cum. Supp. 1974). The Workmen's Compensation Court awarded benefits of $100 per week, the statutory maximum in effect on February 2, 1977, when Mr. Osteen ceased working due to his disease. § 48-122 (Cum. Supp. 1976). This action was correct since, as noted above, in the case of an occupational disease such as this one, the "'date of injury,' within the meaning of the Workmen's Compensation Act, is the date when the disability is first incurred . . . ." *Hauff v. Kimball*, 163 Neb. 55, 61, 77 N.W.2d 683, 687 (1956). According to *Chadd v. Western Cas. & Sur. Co.*, 166 Neb. 483, 89 N.W.2d 586 (1958): "All calculations to be made under the provisions of section 48-121, R.R.S. 1943, and amendments thereof, have reference to wages, percentages, and results as of the time of the injury." (Syllabus of the court.) Since the date of injury in this case was February 1, 1977, the lower court correctly applied the rate in effect on that date.

Finally, appellant argues, apparently, that appellee is not entitled to attorney fees in this court because of certain payments made to her by Jelco, Inc., and A. H. Bennett Company pursuant to stipulations between those companies and appellee. Basically, the stipulations stated that in return for a payment to appellee of $1,250 from each company, appellee would present no evidence against either company, would not resist a motion to dismiss made at the close of her case by either company, and would credit the amount received against any possible award made against the stipulating company. Appellant argues that this amounts to a modification of the award on appeal which would forbid an

allowance of attorney fees in this court under Neb. Rev. Stat. § 48-125 (Reissue 1978), since the stipulations were "accepted by the Nebraska Workmen's Compensation Court on rehearing."

On rehearing, the stipulations were offered into evidence, at which time the following colloquy took place between the court and various attorneys: "THE COURT: The mere fact that the exhibit is offered and the fact that the exhibit may be received would not indicate that the Court would necessarily feel or find that all items contained therein are absolutely verity and truthful.

"MR. STOUFFER: All right.

"MR. NEVINS: I don't see how that could be binding on the Court at all.

"THE COURT: I agree with you, Mr. Nevins."

It is difficult to see how this amounts to a reduction of the award on appeal. The payments were to be credited only in the event that liability was assessed against either Jelco, Inc., or A. H. Bennett Company. Such was not the case either on rehearing or in this court. Appellant has received no reduction in the award against it in this case on appeal, and, thus, appellee is entitled to an attorney fee of $2,500 in this court.

Appellant's assignments of error are without merit. The award of the Workmen's Compensation Court on rehearing is affirmed.

AFFIRMED.