**DOERFER DIVISION OF CCA, Appellee,**

v.

**Byron James NICOL, Claimant, Appellee,**

and

**Wayne Engineering Corporation, Employer, and Maryland Casualty Company, Insurance Carrier, Appellants,**

and

**Robert C. Landess, Iowa Industrial Commissioner, Respondent.**

No. 83–755.

Supreme Court of Iowa.

Dec. 19, 1984.

Samuel T. Beatty of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellants.

Jim D. DeKoster of Swisher & Cohrt, Waterloo, for appellee Doerfer Div. of CCA.

James C. Wilson and Donald C. Wilson of Wilson, Hall, Wilson & Craig, Eldora, for appellee Byron James Nicol.

Considered by REYNOLDSON, C.J., and McCORMICK, LARSON, SCHULTZ, and CARTER, JJ.

REYNOLDSON, Chief Justice.

This worker's compensation proceeding requires interpretation of several statutes in chapter 85A, "Iowa Occupational Disease Law," to determine which of two successive employers shall be held liable for claimant Byron James Nicol's occupational disease. There is no dispute that Nicol's machine shop work for three employers exposed him to coolant, used in the metal cutting process, chrome and nickel, and that he ultimately was afflicted by an allergic contact dermatitis—a hypersensitive reaction to these and other substances. This disease, of course, ended his machine shop career.

Nicol successively worked for Schultz Manufacturing (Schultz) (June 1976 to February 3, 1978), Wayne Engineering (Wayne) (February 9, 1978 through June 9, 1978), and Doerfer Division of CCA (Doerfer) (June 10, 1978 through July 31, 1978). In all of this employment he was exposed to coolant, a liquid applied to reduce the heat of metal being cut, but it was during his work at Wayne that his exposure was heavy and the symptoms of his disease were first manifested. Nicol testified the coolant flowing on metal pieces he was turning on a lathe would splatter on him, and that small metal chips would fly off and burn his arms.

In late March or early April 1978, Nicol noticed a rash on his arms. He sought treatment at the emergency room of a Cedar Falls hospital where his condition was diagnosed as contact dermatitis. When the medicines prescribed ran out, Nicol's dermatitis returned to his hands and arms. A Cedar Falls doctor prescribed ointments, antibiotics and steroids. She instructed Nicol to avoid work for ten days and thereafter to avoid coolant. After ten days Nicol resumed work at Wayne, but at a different job. His condition improved, but he sought and found a better-paying job at Doerfer, where his exposure to coolant would not be so extensive.

Before Nicol left Wayne he trained a replacement on the lathe and his symptoms again became apparent, a matter he explained to the shop supervisor at Doerfer. At Doerfer Nicol wore gloves and had contact with coolant less frequently, applying the liquid through a squeeze bottle. His symptoms improved, but then became serious. Nicol's feet were affected, his hands would not open or extend. He quit his job at Doerfer on July 31, 1978. The next day Nicol sought treatment with Dr. Schroeter at Mayo Clinic, Rochester, Minnesota.

Dr. Schroeter diagnosed Nicol's disease as allergic contact dermatitis. The latter was found allergic to coolants, chromates, nickel, and a number of other substances. This restricted his contact with a long list of commonly used items that contained one or more of these materials. Nicol's dermatitis healed in about two weeks. He was directed not to return to machine shop employment and to avoid the substances to which he was allergic.

In February 1979 Nicol sought advice from the rehabilitation center in Waterloo, and in May 1979, he went to the Des Moines center where he remained until August 1979. Nicol was uninterested in some of the careers suggested by the center; others he was unable to pursue because of his allergies. He followed the center's advice by enrolling in the University of Northern Iowa in September 1979. After completing courses to improve his basic skills, Nicol began classes in January 1980. He failed a course and dropped out of school.

Nicol has neither sought nor held employment since he left his Doerfer employment. He currently receives social security benefits of $1,193.80 per month for him-

self and his children. His wife has a net pay of about $150 per week.

Wayne voluntarily had paid Nicol's medical expenses, and a small amount of compensation following his return from Mayo Clinic.

October 3, 1978, Nicol filed with the industrial commissioner a petition for review-reopening, seeking benefits from Wayne and its insurer. Nicol's petition alleged an injury on April 13, 1978, the first time he sought medical attention for his condition while employed at Wayne. Wayne answered October 9, 1978.

December 13, 1979, Wayne sought and was granted permission to bring Doerfer into the proceeding. Wayne then filed a cross-petition against Doerfer, alleging Nicol was suffering from an occupational disease and Doerfer was liable for Nicol's claim as "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease" under the language of Iowa Code section 85A.10. Nicol then filed a cross-claim against Doerfer, asserting he came into contact at Doerfer "with various materials and metals to which he was allergic" and that if the commissioner determined his contact dermatitis to be an occupational disease that he be granted recovery against Doerfer.

In a decision filed January 28, 1982, following a hearing, a deputy industrial commissioner held Nicol acquired the occupational disease dermatitis through contact with coolant and metals while working for Wayne and Doerfer. Because Doerfer was the last employment in which Nicol was exposed to these substances, Doerfer was liable to pay Nicol's compensation under Iowa Code section 85A.10. The deputy rejected Doerfer's defense that it had not received a statutory notice from Nicol, reasoning Doerfer had actual notice of its employee's physical problems. Nicol's industrial disability was fixed at ten percent of the body as a whole and Doerfer was

ordered to pay Nicol fifty weeks of permanent partial disability benefits at a rate of $206.69 per week.

Doerfer and Nicol both appealed to the industrial commissioner. The commissioner's June 29, 1982, decision [1] affirmed the deputy's ruling in all respects, except that it raised Nicol's industrial disability from ten to twenty percent. The appeal decision specifically found Nicol was last injuriously exposed to the irritants that caused his dermatitis while working for Doerfer, thus triggering that employer's Iowa Code section 85A.10 liability to pay Nicol's claim.

July 27, 1982, Doerfer filed a petition for judicial review in the district court for Black Hawk County. Wayne answered on August 9, 1982. August 12, 1982, Nicol filed an answer, a counterclaim against Doerfer seeking benefits for a 100 percent industrial disability, and a cross-petition against Wayne seeking the same relief against that employer should the court find Wayne, not Doerfer, liable on his claim.

September 9, 1982, Wayne filed an application for a separate adjudication of law points. Wayne alleged Nicol's cross-petition against it was untimely under Iowa Code section 17A.19(3), and that his cross-petition not only failed to set forth information required by section 17A.19(4), but raised issues not previously raised. November 17, 1982, the district court denied the application.

The district court's ultimate ruling on April 29, 1983, accepted almost all of the commissioner's factual findings and conclusions. It determined, however, that because Nicol's disease was known to exist at the time he began working for Doerfer, the conditions at Doerfer could not have caused it; therefore, Iowa Code section 85A.10 was inapplicable. The court thus held Wayne liable for payment of Nicol's compensation. Although the court reversed the agency by holding Wayne liable to pay Nicol's benefits, it based its award

---

1. Although we refer in this opinion to the commissioner's decision, the final agency decision was prepared and filed by a deputy commissioner pursuant to the provisions of Iowa Code section 86.3, under a written delegation of authority.

on the compensation Nicol had earned while working for Doerfer.

From these holdings Wayne has appealed to this court and Nicol has cross-appealed. We affirm in part, reverse in part, and remand with directions.

### I. *Scope of Review.*

A review of the industrial commissioner's decision is governed by Iowa Code section 17A.19. *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 282 (Iowa 1983); *Ward v. Iowa Department of Transportation,* 304 N.W.2d 236, 237 (Iowa 1981). The scope of review is not de novo. *Briar Cliff College v. Campolo,* 360 N.W.2d 91, 93 (Iowa 1984); *Ward,* 304 N.W.2d at 237. The commissioner's findings have the effect of a jury verdict. *Beier Glass Co.,* 329 N.W.2d at 282. Those findings are applied broadly and liberally to uphold rather than defeat the commissioner's decision; they are binding on appeal unless a contrary result is demanded as a matter of law. *Briar Cliff College,* 360 N.W.2d at 93; *Ward,* 304 N.W.2d at 238. The commissioner's determination of a law question is entitled to careful consideration but nonetheless is subject to review. *Beier Glass Co.,* 329 N.W.2d at 282. The above rules are applicable in the district court review. We review the district court's appeal decision for errors of law. In this pursuit we reapply the section 17A.19(8) standards to the agency action to determine whether our conclusions are the same as those of the district court. *Foods, Inc. v. Iowa Civil Rights Commission,* 318 N.W.2d 162, 165 (Iowa 1982); *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426, 429–30 (Iowa 1979).

With these principles in mind, we turn to the issues generated in this appeal.

### II. *Did District Court Err in its Interpretation of Iowa Code Section 85A.10 When it Assigned Liability for Nicol's Compensation to Wayne Rather Than to Doerfer?*

These parties do not dispute that Nicol's disability is the result of an occupational disease. The expert medical evidence adduced at the hearing fully supported the agency's finding in this regard. When Iowa had a "schedule" type occupational disease statute [2] listing only seventeen compensable diseases, one was described as "Dermatitis. Infection or inflammation of the skin or contact surfaces due to oils, cutting compounds or lubricants, dust, liquids, fumes, gases, vapors and solids." *See* Iowa Code § 85A.9 (1973).

The fighting issue between these two employers is the proper interpretation and application of Iowa Code section 85A.10:

> Last exposure—employer liable. Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, shall be liable therefor. The notice of injury and claim for compensation as hereinafter required shall be given and made to such employer, provided, that in case of pneumoconiosis, the only employer liable shall be the last employer in whose employment the employee was last injuriously exposed to the hazards of the disease during a period of not less than sixty days.

We have examined this statute only in *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 188–91 (Iowa 1980). There we accepted the view that the last injurious exposure rule, codified in Iowa Code section 85A.10, does not require a claimant to prove causation by any particular employer, or that the last "injurious exposure" in fact be the cause of the disease. Rather, we held, it is sufficient that claimant prove certain hazardous conditions induced his disease and that these conditions existed at

---

2. The "schedule" of diseases was eliminated from Iowa Code chapter 85A by the 1973 session, 65th G.A. ch. 144 § 30. At the same time the legislature broadened the definition of occupational diseases in Iowa Code section 85A.8.

*See* 1973 Iowa Acts ch. 144 § 24; *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 190 (Iowa 1980); *see also* Note, The Iowa Occupational Disease Law, 34 Iowa L.Rev. 510, 512–13 (1949).

the last place he was employed in a concentration sufficient to cause the disease. *McSpadden,* 288 N.W.2d at 188–89.

In *McSpadden* we relied on *Climax Uranium Co. v. Claimants,* 33 Colo.App. 337, 342, 522 P.2d 134, 136 (1974) ("[W]e believe there is a clear manifestation of the legislature's intention to hold liable the last employer in whose employment the employee was exposed to injurious concentrations of toxic materials, regardless of the length of the exposure required actually to cause the disease.") and *W.M. Coal Co. v. Campbell,* 344 S.W.2d 794, 795 (Ky.1961) ("It is recognized that the disease may have developed over many years of employment, but the ultimate fact which annexes liability to a specific employer is the date of incapacity under conditions which could cause the disease."). We also found support in a statement now found in 4 A. Larson, *The Law of Workmen's Compensation* § 95.26(a), "It goes without saying that, before the last injurious exposure rule can be applied, there must have been *some* exposure of a kind contributing to the condition." (Emphasis in original.)

In determining the time of last injurious exposure, courts frequently use the "time of disability test" described in 4 A. Larson, *The Law of Workmen's Compensation* § 95.25(a):

> In the search for an identifiable instant in time which can be used to determine ... who is the last employer for purposes of the last injurious exposure rule, the date of disability is frequently chosen. Once the date of disability is determined, the determination of which insurer is liable is accomplished by simply searching backwards to find the last time when claimant was exposed to the disease-causing substance, subject, of course to the jurisdiction's rules on the degree of exposure required.

When the onset of disability is the key factor in assessing liability under the last injurious exposure rule, it does not detract from the operation of this rule to show that the disease existed under a prior employer or carrier, or had become

actually apparent, or had received medical treatment, or, indeed ... had already been the subject of a claim filed against the prior employer, so long as it had not resulted in disability.

(Footnotes omitted.)

The above rule finds support in a number of decisions from other jurisdictions. *See, e.g., Employers Liability Assurance Corp. v. Employers Mutual Liability Insurance Co.,* 232 Ark. 113, 116–18, 334 S.W.2d 701, 703–04 (1960) (Although employee's dermatitis appeared during period insured by previous carrier, second carrier held liable because the permanent disability did not occur until it was on the risk.); *Gregory v. Peabody Coal Co.,* 355 S.W.2d 156, 157–58 (Ky.1962) (second employer liable even though it was possible claimant contracted his disease to a substantial degree in a prior employment); *Sosnowski v. Dandy Hamburger,* 384 Mich. 221, 227, 180 N.W.2d 761, 762–63 (1970) (second insurer liable under last injurious exposure rule even though claimant's dermatitis manifested itself prior to the date second insurer came on the risk); *Haynes v. Feldspar Producing Co.,* 222 N.C. 163, 169–70, 22 S.E.2d 275, 279 (1942) (Liability for claimant's silicosis benefits assigned to second employer because court found claimant to be, at the time of second hiring, capable of further injury.); *Hudgins v. U.S. Fidelity and Guaranty Co.,* 479 S.W.2d 804, 805 (Tenn.1972) (first employer and its carrier absolved from liability even though claimant's dermatitis symptoms were apparent during such employment, when evidence disclosed claimant was injuriously exposed to the disease during the second employment).

Our applicable statutes, read together, support imposition of the time of disability test. Iowa Code section 85A.10 only applies "where compensation is payable." Section 85A.5 ("Compensation payable") provides that all employees subject to the chapter "who shall become disabled" shall receive compensation. Finally, occupational disease "disablement" is defined in section 85A.4 as "the event or condition where

an employee becomes actually incapacitated from performing his work or from earning equal wages in other suitable employment."

In the case before us, there was adequate evidence, including expert testimony, to support the agency's finding that Nicol's contact with the irritants at Doerfer caused further exacerbation of his dermatitis, which led to his ultimate disability. Dr. Schroeter testified Nicol's sensitization would be in excess of two or three years, and possibly for his lifetime. This specialist also testified that Nicol could not engage in work such as he performed at Doerfer. Doerfer's records removing Nicol from the payroll noted "Medical reasons— Unable to take shop atmosphere." The shop supervisor explained this notation did not refer to the air, but rather "the type of work [Nicol] had to do, the type of materials he worked with."

Doerfer argues Nicol's contact dermatitis first manifested itself at Wayne and it was there the last injurious exposure occurred. The time of disability test implicit in our above statutes, and the authorities we already have cited, provide an appropriate answer to this contention. Clinical manifestations of occupational diseases typically are caused by prolonged exposure to hazardous substances. *McSpadden*, 288 N.W.2d at 188.

Doerfer also argues the physical problems Nicol had at Doerfer were simply a reoccurrence of the disease contracted at Wayne. It is true that occupational disease "recurrence of disability" rules have been recognized in several jurisdictions. *See* 4 A. Larson § 95.27. Under the record before us, the agency arguably might have found adequate evidence to apply that doctrine. On the other hand, there was sufficient evidence to support the agency's finding that the disease itself was contracted while working for both Wayne and Doerfer. Of course, to recover under Iowa Code section 85A.10, Nicol was not required to show that conditions at Doerfer in any way caused his dermatitis. Nicol was required only to show an injurious exposure. Though he was not required to do so, Nicol produced substantial evidence that his condition deteriorated during his Doerfer employment. That evidence justified the commissioner's finding that Nicol was last injuriously exposed at Doerfer. In addition, Dr. Schroeter testified the dermatitis would continue to "nourish" as long as Nicol was in contact with the irritants. This specialist and Dr. Zuehlke of University Hospitals at Iowa City both expressed the opinion that Nicol's employment at Doerfer caused a continuation and exacerbation of the disease first apparent at Wayne. We hold the district court was in error in reversing the agency's determination imposing the liability on Doerfer.

Our ruling is supported further by sound principles of public policy. We liberally construe workers' compensation statutes in favor of the worker. *Beier Glass Co.*, 329 N.W.2d at 283; *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 506 (Iowa 1981). Relevant here is the following from *Wilson v. Van Buren County*, 198 Tenn. 179, 186, 278 S.W.2d 685, 688 (1955), quoted with approval in *Osteen v. A.C. & S., Inc.*, 209 Neb. 282, 289–90, 307 N.W.2d 514, 519 (1981):

> [W]e are constrained to so interpret our Workmen's Compensation Law as will best serve the interests of employees who suffer from an occupational disease, rather than attempt an adjustment of their rights in the light of equities that may exist between [successive employers].

The last injurious exposure rule codified in Iowa Code section 85A.10, coupled with the time of disability test, contains an acknowledged element of arbitrariness. As we wrote in *McSpadden*, 288 N.W.2d at 188, chapter 85A "identifies the employer who shall be held accountable." In the long view, there is merit in not consigning a diseased employee's claim to the sidelines while two employers stage a lengthy fight over apportionment, or responsibility, or inject the problems of out-of-state employers and statutes of limitations. *See* 4 A. Larson § 95.12. Although the result some-

times may seem harsh on the employer charged with the liability under our interpretation of Iowa Code section 85A.10, "there will be a spreading of the risk when the total picture of [such] litigation is considered and this rule is applied on a nationwide basis." *Osteen*, 209 Neb. at 291, 307 N.W.2d at 520. *See In re Compensation of Bracke*, 293 Or. 239, 248, 646 P.2d 1330, 1336 (1982) ("The reason for the [last injurious exposure] rules lies not in their achievement of individualized justice, but rather in their utility in spreading liability fairly among employers by the law of averages and in reducing litigation.").

III. *Did District Court Err in Affirming the Commissioner's Conclusion that Doerfer had Actual Knowledge of Nicol's Claim?*

Despite our determination of the substantive law in the last division, we must still decide whether Nicol met notice requirements.

Iowa Code section 85A.18 provides:

Notice of disability or death—filing of claims. Except as herein otherwise provided, procedure with respect to notice of disability or death, as to the filing of claims and determination of claims shall be the same as in cases of injury or death arising out of and in the course of employment under the workers' compensation law. Written notice shall be given to the employer of an occupational disease by the employee within ninety days after the first distinct manifestation thereof, and in the case of death from such an occupational disease, written notice of such claim shall also be given to the employer within ninety days thereafter.

The reference to procedural notice in the above statute refers, of course, to Iowa Code sections 85.23 and .24. Section 85.23 provides no compensation shall be allowed unless the employer is given notice or "[u]nless the employer or his representative shall have actual knowledge of the occurrence of an injury received within ninety days from the date of the occurrence of the injury."

■ The commissioner found substantial evidence that Doerfer had actual knowledge of Nicol's "injury" within the ninety-day period prescribed in sections 85A.18 and 85.23. The trial court affirmed. Doerfer argues that it knew only that Nicol had a disease related to his *previous* employment, not that he had one related to his employment with Doerfer. Nicol contends there is substantial evidence in the record to sustain the commissioner's conclusion that Doerfer had actual knowledge that Nicol's disease was related to his work at Doerfer. The question, of course, is not whether the evidence in the record will support a conclusion that Doerfer did not have actual knowledge, but whether the record contains substantial evidence to support the commissioner's finding that Doerfer had actual notice. *Robinson v. Department of Transportation*, 296 N.W.2d 809, 812 (Iowa 1980). *See also Briar Cliff College*, 360 N.W.2d at 95. The actual knowledge that obviates the necessity of giving statutory notice must include some knowledge that the injury or illness is claimed to be work connected or might give rise to a claim for benefits. *Id.* at 811.

■ The record reveals substantial evidence that Nicol's dermatitis was apparent when he commenced working for Doerfer. He explained his allergy to a supervisor. There is further evidence his supervisors knew his condition worsened while employed by Doerfer and, more significantly, they suspected a claim for benefits might be filed against Doerfer. From Nicol's severe and rapid decline while working in the Doerfer environment, the commissioner could have inferred this employer had actual knowledge that Nicol's illness was work connected. We find no ground to reverse the decision of the commissioner or the court on this ground.

IV. *Did the District Court Have Jurisdiction to Consider Nicol's Claim the Commissioner Erroneously Fixed his Industrial Disability at Twenty Percent Instead of 100 Percent?*

Doerfer's petition sought judicial review on several grounds, including the allegation that Nicol's twenty percent industrial disability award against Doerfer "was improper and not sustained by any relevant admissible evidence in the record." Wayne's timely answer, of course, admitted this allegation.

Nicol's filing was captioned "Answer to Petition for Judicial Review, Counterclaim, and Cross-Petition for Judicial Review." Count I admitted the allegations of Wayne's petition relating to the nature of the action, the particular agency action appealed from, and the factual basis for the venue, see Iowa Code section 17A.19(4)(a), (b) and (c), and denied the grounds asserted. Count II was a "counterclaim" against Doerfer, alleging the commissioner's finding of only twenty percent permanent partial disability was based on error of law and not supported by substantial evidence. Count III was a "cross-petition" against Wayne seeking the same relief. Neither the counterclaim nor the cross-petition provided the information Iowa Code section 17A.19(4)(a), (b) and (c) required to be stated in a petition for review.

Wayne filed an application for separate adjudication of law points, seeking dismissal of count III of Nicol's pleading because it did not contain those allegations the above statute required, and because it was not filed within thirty days after the commissioner's final decision as required by Iowa Code section 17A.19(3). Wayne's district court brief asserted these alleged failures deprived the district court of jurisdiction, citing *Neumeister v. City Development Board*, 291 N.W.2d 11, 13–14 (Iowa 1980). *See Iowa Industrial Commissioner v. Davis*, 286 N.W.2d 658, 662 (Iowa 1979) ("The requirements of section 17A.19 are jurisdictional and must be met.").

▮ The district court ruled for Nicol on Wayne's application. Wayne contends this ruling was erroneous. The same issues were not raised by Doerfer. We have held for Wayne on the liability issue in division II of this opinion. Thus we would not be required to address this question except

that if the district court had no jurisdiction to consider Nicol's claim of enhanced disability against Wayne, this court likewise would be precluded from considering the same claim against Doerfer. *Neumeister*, 291 N.W.2d at 13 ("If district court's ruling was without jurisdiction and void, there is no jurisdiction in this court and we must dismiss the appeal."). Further, the jurisdictional issue, no matter how raised, must be disposed of and we will examine the grounds of our jurisdiction on our own motion. *Pierce v. Pierce*, 287 N.W.2d 879, 882 (Iowa 1980); *Loudon v. Hill*, 286 N.W.2d 189, 191 (Iowa 1979); *Qualley v. Chrysler Credit Corp.*, 261 N.W.2d 466, 468–71 (Iowa 1978).

Several statutes and rules are implicated in this issue. It is true, of course, that "[a] person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review" under Iowa Code chapter 17A.19. *See* Iowa Code § 17A.19(1) (1983). Iowa Code section 17A.19(2) provides such proceedings "shall be instituted by filing a petition," and section 17A.19(3) requires that petition to be filed within thirty days after a final decision of the agency.

To accept Wayne's analysis would require *all* parties adversely affected by final agency action in a contested case to file a *petition*, setting out duplicative information, within thirty days. By waiting until the thirtieth day before filing, one party could strip other parties, dissatisfied with the decision but nonetheless willing to acquiesce, of any opportunity for affirmative relief. Such a theory finds no support in our law or in sound public policy.

Iowa Code section 17A.19(2) relevantly provides:

Any party of record in a contested case before an agency wishing to intervene and participate in the review proceeding must file an appearance within forty-five days from the time the petition is filed.

In the case before us, Nicol filed a timely appearance. Iowa Rule of Civil Procedure 331 provides that except to the extent they

are inconsistent with Iowa Code chapter 17A (Iowa Administrative Procedure Act (IAPA)) or other rules in division XVI, the rules of civil procedure shall be applicable to proceedings for judicial review of agency action brought under the IAPA. Accordingly, the district court viewed Nicol as a section 17A.19(2) intervenor and then turned to Iowa Rule of Civil Procedure 75 to find Nicol's right to "[join] with the plaintiff or defendant or [claim] adversely to both." More applicable in most situations, but not basically inconsistent, is an IAPA intervenor's Iowa Rule of Civil Procedure 333(a) right to "join with petitioner or respondent or claim adversely to both." This rule is inapplicable in this situation, however, because under the provisions of the workers' compensation act Nicol is not an intervenor, but a respondent.

Iowa Code section 17A.19(4) states "[t]he petition for review shall name the agency as respondent." At the time of these events, however, Iowa Code section 86.29 modified that requirement:

> Notwithstanding the terms of the Iowa administrative procedure Act, in a petition for judicial review of a final decision in a contested case under any provision of the "Workers' Compensation Act", the name of the opposing party shall precede the name of the agency as respondent.[3]

Iowa Rule of Civil Procedure 332 provides:

> Respondent shall, within twenty days from the date of personal service or mailing of a petition for judicial review under Iowa Code section 17A.19(2), serve upon petitioner ... a written special appearance, motion, or answer.

Here Nicol timely filed an answer. Applying our civil rules pursuant to Iowa Rule of Civil Procedure 331, Nicol's answer might contain a counterclaim against Doerfer, *see* Iowa R.Civ.P. 72, or a cross-claim against coparty Wayne, *see* Iowa R.Civ.P. 33 and 68 ("Allowable pleadings ... an answer to a cross-claim, if the answer contains a cross-claim."). It is not fatal, of course,

that Nicol's claim against Wayne was captioned erroneously as a cross-petition rather than a cross-claim. *See Kelly v. Nix*, 329 N.W.2d 287, 291 (Iowa 1983).

■ Nor do we find any fatal defect in the failure of Nicol's filing to contain all of the basic information required by Iowa Code section 17A.19(4)(a), (b) and (c). That information was contained in Doerfer's petition, and the answer admitted these allegations. Iowa Code section 17A.19(4) outlines the allegations that should be contained in a petition for review, not the response. All of these papers were filed in the same proceeding. This avoided a multiplicity of proceedings and reviews, and fulfilled the avowed legislative intent in the IAPA

> to simplify the process of judicial review of agency action as well as increase its ease and availability. In accomplishing its objectives, the intention of this chapter is to strike a fair balance between these purposes and the need for efficient, economical and effective government administration.

Iowa Code section 17A.1(2); *see Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 648 (Iowa 1980). We hold the district court, and consequently this court, had jurisdiction to review Nicol's claim that he was entitled to benefits based on a finding of 100 percent industrial disability.

V. *Did the District Court Err in Determining the Commissioner's Finding of Twenty Percent Disability was Supported by Substantial Evidence?*

The deputy commissioner's review-reopening ruling fixed Nicol's disability at ten percent of the body as a whole. The deputy took into consideration Nicol's functional impairment (two percent of the body as a whole), age, education, past employment, and his "complete lack of motivation." The commissioner's appeal decision pointed out that Nicol was "precluded from many areas of employment" and increased

---

**3.** This section was amended later, eliminating the industrial commissioner as a respondent in appeals from final agency action, by providing that "opposing party shall be named the respondent, and the agency shall not be named as a respondent." 1983 Iowa Acts ch. 105 § 8.

his industrial disability to twenty percent. District court affirmed.

■ Compensation is not awarded for injury, but for disability. *Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 466 (Iowa 1969). Disability under Iowa Code chapter 85A is determined by a consideration of age, education, qualification, experience and inability, due to injury, to engage in the employment for which the claimant is fitted. *McSpadden*, 288 N.W.2d at 192. These factors also apply in determining a claimant's capacity to perform his work or earn equal wages in other suitable employment, the standards for determining disability under Iowa Code section 85A.4. *Id.* These were the considerations the commissioner applied to Nicol's case. Nicol argues the commissioner applied the wrong rule of law, which caused him to set the award too low, or, in the alternative, that there was not substantial evidence to set the award so low. Nicol also contends Doerfer's failure to cross-appeal precludes us from granting it any relief on the question of the extent of Nicol's disability.

In view of our disposition of Nicol's main contention, we need not address his alternative grounds. See, however, *Prestype, Inc. v. Carr*, 248 N.W.2d 111, 121 (Iowa 1976); *Morris Plan Leasing Co. v. Bingham Feed and Grain Co.*, 259 Iowa 404, 424, 143 N.W.2d 404, 417 (1966); *Randolph Foods, Inc. v. McLaughlin*, 253 Iowa 1258, 1277, 115 N.W.2d 868, 869 (1962). Clearly, however, we may examine Nicol's claim that he is entitled to 100 percent disability, an issue it was his burden to establish by a preponderance of the evidence. *See Blacksmith v. All-American, Inc.*, 290 N.W.2d 348, 353 (Iowa 1980).

To support his contention, Nicol introduced into evidence an eight page list of some of the substances to which he was sensitized; expert medical testimony that if he were to come in contact with any of those substances he would suffer severe contact dermatitis; his attempts to obtain help from the Iowa rehabilitation center; testimony of his former employer that he was an "excellent" worker; and his history of steady employment prior to his disablement.

■ Doerfer relies on competent medical testimony that placed Nicol's functional impairment of the body as a whole at only two percent. There was evidence from which the commissioner could have found Nicol has been relatively free of dermatitis since January 1979, but has failed to make employment applications even though he has not been medically advised to avoid work. He had gained previous experience in postal work, as a truck driver, and had supervisory skills. He tests above average on the basic intelligence test. He has no difficulty in getting in and out of a car, or driving. At the time of hearing he had not contacted the rehabilitation center for about nine months. Nicol can mow his yard, but ordinarily has a son do it because he does not want to. There was substantial evidence to support the commissioner's finding that he was lacking in motivation, and that he sustained an industrial disability of twenty percent. *See Ross v. Ross*, 308 N.W.2d 50, 52 (Iowa 1981).

We find no reason to disturb the decisions of the commissioner and the district court in this regard.

VI. *Did District Court Err in the Computation of Benefits?*

In moving the liability from Doerfer to Wayne, district court overlooked readjusting the compensation award to reflect Nicol's lower wage level at Wayne. Nicol agrees with Wayne on this point, but the issue is mooted by our reversal of the district court in division II, in which we reimpose liability on Doerfer.

In summary, we reverse the district court's determination that Wayne and not Doerfer should assume the liability for Nicol's occupational disease. We affirm its holding that the commissioner correctly determined Nicol's industrial disability at twenty percent, and we remand to the industrial commissioner for such other proceedings as may be required. Costs are assessed to Doerfer.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.