WILLIAM E. LINDGREN AND DONNA LINDGREN, HUSBAND AND WIFE, APPELLEES, v. CITY OF GERING, NEBRASKA, A MUNICIPAL CORPORATION, AND GERING IRRIGATION DISTRICT, APPELLANTS.

292 N. W. 2d 921

Filed June 3, 1980. Nos. 42887, 42892.

James W. Ellison, James M. Mathis, and Alan D. Carlson of Holtorf, Hansen, Kovarik, & Nuttleman, P.C., for appellant City of Gering.

Jim Zimmerman of Atkins, Ferguson, Hahn, Zimmerman, & Carney, for appellant Gering Irrigation District.

James R. Hancock and Richard S. Kleager of Hancock Law Offices, for appellees.

Heard before KRIVOSHA, C. J., BRODKEY, WHITE, and HASTINGS, JJ., and CAPORALE, District Judge.

KRIVOSHA, C. J.

The appellants, the City of Gering, Nebraska, a municipal corporation, and Gering Irrigation District, each have appealed from an order of the District Court for Scotts Bluff County, Nebraska, entered after a trial to the court, finding the City and the District jointly and severally liable to William E. Lindgren and Donna Lindgren in the amount of $3,481 under the provisions of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 to 2416 and 2418 to 2420 (Reissue 1977) and 2417 (Cum. Supp. 1978). Each appellant has individually appealed maintaining that, if there is any liability, it is the liability of the other. In addition, each appellant maintains that the Lindgrens were contributorily negligent and are, therefore, precluded as a matter of law from recovering. Further, each of the appellants maintains that the evidence concerning damages was insufficient to permit the court to make an award and, finally, that the trial court erred in refusing to answer some 22 questions put to it by the District, presumably pursuant to the provisions of Neb. Rev. Stat. § 25-1127 (Reissue 1975). For the reasons more particularly set out in this opinion, we believe that the trial court was correct in all respects and that the judgment should be affirmed.

The evidence, as disclosed by the record, was sufficient for the court to find the following: That the Lindgrens own a residence on a lot which lies approximately 200 feet east of the District's canal which runs north and south alongside a row of houses paralleling 21st Street in Gering, Nebraska. The District's canal is approximately 16 feet wide.

The east bank has a service road on it approximately 15 feet wide. The interior of the canal is 8 feet deep from the top of the service road to its bottom. The level of water in the canal is usually from 3 to 3½ feet below the top or surface of the road except after heavy rains. The service road lies about 4 feet above the surface of the land to the rear of the Lindgrens' house.

On August 1, 1976, an employee of the District, while "riding the ditch," observed a whirlpool in the water in the canal immediately behind the Lindgren house, which he felt indicated a break in the bank. He returned to the District shop and obtained a backhoe for the purpose of repairing the bank. He then returned to the canal with the backhoe. While making the repair, he found a pipe which was approximately 1 to 1¼ inches in diameter and about 20 feet long, buried in the road next to the canal. He dug the pipe out, took dirt from the east side of the bank with the backhoe and dumped it where he had pulled the pipe out. He then drove across the fill to tamp it down. Experts called to testify stated that, in their opinion, the repair to the canal was improper. The evidence tends to bear this out because the following day, August 2, 1976, an employee of the City received a call at about 5:30 a.m. from a Gering resident, not the Lindgrens, complaining of water in the basement. Seeking out the source of this flooding, the employee eventually found the break in the District's ditch. He observed a 9-foot-wide break in the ditch bank at that point, with water pouring through it.

The water was washing out of the ditch and swirling around a manhole, located immediately east of the ditch, which stood above the terminus of the City's sewer line in that area. Extending out from this buried terminus in different directions were three short "stub-outs," extension points built on to provide for future expansion of the system but which

were supposed to have been temporarily plugged and watertight.

The water from the ditch had filled all of the sewer lines and manholes from 21st Street to 10th Street and had backed up into many homes through the sewer lines. The sewer lines and the manholes were owned and maintained by the City.

Later, the employee saw water running into the manhole area and going "straight down." He removed the manhole cover, looked down inside, and saw water running in from the west stub-out. It was the opinion of this employee, an expert witness, that the stub-out had not been properly covered and that, had it been properly covered, the water would not have found its way into the Lindgrens' basement.

After the breakout, the Lindgrens found in their basement 10 inches of water which came up through the sanitary sewer. There was also sand, mud, and raw sewage brought into the basement through the sewer. Mr. Lindgren itemized the various items that were damaged and gave his opinion as to their value. He concluded that the total amount of his damages was $3,481.

The court could further find from the evidence that, in the spring of 1971, Mr. Lindgren obtained permission from the then manager of the District to draw water for his garden out of the District canal by means of a pipe. Mr. Lindgren claimed that he obtained a pipe about 2 inches in diameter and from 16 to 18 feet long and laid the pipe across the top of the road and then, using 45-degree elbows on each end, ran one extension down into the water and another extension down on the other side to a buried plastic pipe which led to his garden. The length of pipe across the road was buried at a depth of about 4 inches but could be felt by anyone using the road. Any person driving along the ditch road, including a ditch rider employed by the District, could see the pipe since it stuck out 12 to 18 inches on either side of

the road. Mr. Lindgren irrigated his garden that way during the summers of 1971, 1972, and 1973. In the summer of 1974, he became discouraged with the pipe system and used it only occasionally that year. He discontinued its use in 1975.

In the spring of 1973, the ditch company struck the pipe with its sloper machine, tearing it out and bending it. Mr. Lindgren was angry, since he felt he had had permission to keep it there, and several times went to the District office to complain to the manager but was unable to see him. He told the manager's secretary that, if the District wanted to clean the ditch, they should notify him prior to doing so and he would remove the pipe. In any event, the evidence would justify a finding that the District was aware that the pipe was there, as it was aware that others had also inserted pipes into the canal. A former manager testified that he tore one out for Mr. Lindgren either 2 years in a row or 3 years in a row and constantly was tearing out pipes up and down the canal. Furthermore, he testified that the ditch riders were instructed to look every day for such pipes.

In examining the matter before us, insofar as the liability of either the District or the City is concerned, we must keep in mind that on appeal to the Supreme Court of an action brought under the Political Subdivisions Tort Claims Act, the finding of the trial court will not be disturbed unless it is clearly wrong. See, *Steel Containers, Inc. v. Omaha P. P. Dist.,* 198 Neb. 81, 251 N.W.2d 669 (1977); *Daniels v. Andersen,* 195 Neb. 95, 237 N.W.2d 397 (1975); *Christensen v. City of Tekamah,* 201 Neb. 344, 268 N.W.2d 93 (1978). Furthermore, we have many times said that:

> "In determining the sufficiency of the evidence to sustain a judgment, it must be considered in the light most favorable to the successful party. Every controverted fact

must be resolved in his favor and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence.'' [Citations omitted.]

See *Daniels v. Andersen, supra* at 98, 237 N.W.2d at 400.

We turn first to the liability, if any, of the District. Under the holdings of our previous decisions, an irrigation district is liable for seepage damage under Neb. Const. art. I, § 21, without regard to negligence. See, *Halstead v. Farmers Irr. Dist.,* 200 Neb. 314, 263 N.W.2d 475 (1978); *Applegate v. Platte Valley Public Power and Irrigation District,* 136 Neb. 280, 285 N.W. 585 (1939); *Baum v. County of Scotts Bluff,* 169 Neb. 816, 101 N.W.2d 455 (1960). Even in the absence of evidence of negligence, we would have affirmed the trial court's finding of liability on the part of the District, and nothing we say herein should be interpreted as a departure from our previous holdings in that regard. This case, however, need not be decided on the basis of strict liability, due to the fact that the Lindgrens pleaded and proved specific acts of negligence sufficient to satisfy the trial court and with which we agree. The evidence seems to be clear beyond dispute that the District, having been made aware of the break in the canal, failed to properly repair it. This was virtually conceded by the District and certainly established by reason of the difficulties encountered on the following day.

[T]he owner of an irrigation ditch or canal is required to exercise ordinary care in the construction, maintenance, and operation thereof. Otherwise stated, the measure of care that he is bound to use is that which ordinarily prudent men exercise under like circumstances when the risk is their own, or such as a prudent man, with due regard for the rights of others and the risk of his undertaking, would exercise in conveying

through an artificial channel a substance, such as water, that possesses detrimental and destructive as well as beneficial and productive qualities, unless properly restrained. If the requisite degree of care is not exercised, the proprietor may be held liable for all damage proximately resulting from the wrongful act or omission . . . .

45 Am. Jur. 2d *Irrigation* § 82 (1969). See *Hilzer v. Farmers Irrigation Dist.,* 156 Neb. 398, 56 N.W.2d 457 (1953). Under such a rule of law, it seems clear beyond question that the court was correct in finding the District liable for having failed to properly maintain the canal and for failing to properly repair the break once it came to the District's attention. Such evidence was sufficient for the trial court to hold the District negligent and liable to the Lindgrens. On either ground, absolute liability of an irrigation district for seepage or specific acts of negligence, the trial court's holding was correct.

We then turn to the question of the negligence of the City. In that regard, the evidence was virtually without dispute that a stub-out at the end of the sewer pipe had not been properly capped and that, had it been properly capped, the water would not have been able to find its way into the sewer pipe and into the basements of the adjoining homes. Certainly the City was mindful of the fact that the manhole was located close to the canal and that, if water did escape from the canal, it would find its way into the sewer by reason of the City's failure to properly cap the stub-out.

Both the District and the City were individually negligent in the performance of their respective duties owed to the Lindgrens. Either defendant's negligence may properly be said to be a proximate cause of the resulting injury and damage. Where the negligence of two or more persons concurs, producing a single indivisible injury, such persons are

jointly and severally liable although there was no common duty, common design, or concerted action. See, *Grantham v. Watson Bros. Transportation Co.,* 142 Neb. 362, 6 N.W.2d 372 (1942), *rehearing denied,* 142 Neb. 367, 9 N.W.2d 157 (1943); *Hendren v. Hill,* 131 Neb. 163, 267 N.W. 340 (1936); *Schweppe v. Uhl,* 97 Neb. 328, 149 N.W. 789 (1914).

Insofar as the matter of the Lindgrens' alleged contributory negligence is concerned, the evidence supports the trial court's finding that they were not contributorily negligent. In the first instance, the evidence would establish that the District was aware of the existence of the pipe and, therefore, should have been mindful of it. But, more important than that, the evidence discloses that, when the District first became aware of the breach in the canal wall, water had not yet entered the manhole. It is clear, therefore, that whatever acts the Lindgrens may have committed initially were not a proximate cause of the ultimate damage but, at most, were a condition. Even if it could be said that the presence of the pipe initially precipitated a weakening of the canal, though the evidence is in conflict on that point, it is clear from the evidence that all of that matter could have come to an end had the District, on the one hand, properly repaired the canal when it discovered the breach and the City, on the other hand, properly capped the stub-out when it constructed the sewer. As we stated in *Steenbock v. Omaha Country Club,* 110 Neb. 794, 796, 195 N.W. 117, 118 (1923):

> It is not sufficient that the negligence charged does nothing more than furnish a condition by which the injury is made possible, and if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury.

The Lindgrens' acts, not being a proximate cause

of the subsequent injury and damage, could not constitute contributory negligence.

> "Contributory negligence . . . is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, is a proximate cause . . . of the injury complained of. . . ." [Citation omitted.]

*Novak v. Laptad,* 152 Neb. 87, 94-95, 40 N.W.2d 331, 335 (1949).

We, therefore, believe that the trial court was perfectly correct in finding that each of the appellants was liable for the damages suffered by the Lindgrens and that the Lindgrens were not contributorily negligent.

We turn then to the next issue, that being the measure of damages. Both of the appellants maintain that the trial court should not have considered the evidence of damages because the appellee failed to introduce evidence as to whether the property could have been repaired. They argue that, until it is shown that the property cannot be repaired, one may not show the loss of value. Whatever may be the rule generally, the evidence in the present case supports a finding that most, if not all, the property, having been covered with 10 inches of water, raw sewage, and sand, had to be disposed of. But more importantly, it does not appear that we need to consider that claim. While each of the parties, in their assignments of error, maintain that the evidence came in over objection, the record fails to disclose any objections made by the parties during the testimony, except for one with regard to a damaged rug, or any motion to strike the evidence at the conclusion of the testimony. While an objection was raised with regard to the rug, it was later conceded by all that the rug was totally destroyed and required replacement.

We have frequently said that "a party may not properly assign as error on appeal the admission of evidence where no objection was made thereto at trial." *Scudder v. Haug,* 201 Neb. 107, 111, 266 N.W.2d 232, 235 (1978). See, also, *Breiner v. Olson,* 195 Neb. 120, 237 N.W.2d 118 (1975). "One who fails to object or to move to strike testimony may not predicate error on its admission." *Pauley Lumber Co. v. City of Nebraska City,* 190 Neb. 94, 95, 206 N.W.2d 326, 327 (1973). See, also, *Meyer v. Moell,* 186 Neb. 397, 183 N.W.2d 480 (1971). Since the appellants failed to object or move to strike, the evidence was properly admissible. Once properly admissible, it was proper for the court to consider such evidence. The judgment as to damages, being based upon sufficient evidence in the record, must be affirmed.

We now turn to the last assignment of error. The District submitted to the trial court a request to answer 22 specific questions concerning the lawsuit. The trial court refused to answer each individually, though it did make specific findings of fact and conclusions of law. Appellants argue that, under the provisions of Neb. Rev. Stat. § 25-1127 (Reissue 1975), upon request of a party, the trial court is obligated to answer each specific question posed to the court. We believe that the appellants have misconceived the language of the applicable section. Section 25-1127 provides as follows:

> Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law.

This statute simply provides that, in an action tried to the court, the litigants may request the trial court to make specific findings of fact rather than making a general finding for one of the parties. What those findings of fact should be and how they should be made is dependent upon the finder of fact. Under the provisions of § 25-1127, the court is not obligated to answer specific interrogatories propounded to it by a litigant, but is merely required, when requested, to make such specific findings of fact as the trial court concludes are appropriate and necessary to resolve the action. That the trial court did. There was no error.

For these reasons, therefore, the judgment of the trial court is, in all respects, affirmed.

AFFIRMED.