Donald R. MENNE, Plaintiff,

v.

CELOTEX CORPORATION, et al., Defendants.

No. 85–1929–K.

United States District Court, D. Kansas.

Aug. 19, 1986.

Supplemental Memorandum Order Aug. 28, 1986.

Paul H. Hulsey, Topeka, Kan., Thomas H. Hart, III, Barnwell, S.C., for plaintiff.

James Borthwick, David Larson, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Donald R. Menne brought this action against defendants Celotex, Eagle-Picher Industries, Fibreboard, Keene Corporation, Owens-Illinois, Inc., and Raymark, Inc. to recover damages sustained as a consequence of certain personal injuries suffered from excessive exposure to asbestos dust and fibers, inhaled at his work place. He claimed that asbestos was a known hazardous substance and excessive exposure to it caused his condition.

Plaintiff further claimed that while working as a pipefitter during the years 1942–1948 at the Puget Sound Naval Shipyard near Seattle, Washington, his job continuously placed him in direct proxixmity to asbestos dust. He claimed each of the defendant manufacturers supplied asbestos-related products to the work site, and over time he was exposed to each defendant's product, and that exposure substantially contributed to his ultimate condition.

Plaintiff brought the action on the basis of two separate claims: strict liability in tort, and negligence.

With respect to strict liability in tort, plaintiff claimed each defendant manufactured and sold products which were not reasonably safe for use because they contained asbestos not reasonably safe to human life and health; that the products contained no adequate warnings of the dangers involved with use of asbestos, and that defendants failed to provide adequate directions to the users for proper handling, application and/or removal of the products.

With respect to the negligence claim, plaintiff contended the defendants were negligent in one or more of the following respects: they failed to test the asbestos products for their dangerous propensities; they failed to warn foreseeable users such as plaintiff of the dangers of asbestos; they failed to advise users of the proper methods of safe usage and/or removal; and they failed to remove the products from the marketplace and/or remove the asbestos from the products.

Plaintiff further claimed that even prior to 1949 each of these defendants knew, or reasonably should have known, of the products' dangerous propensities, and the defendants were not excused from their duties to test and warn.

Plaintiff claimed he could recover under one or both of the above theories.

Plaintiff claimed that as a consequence of his exposure he suffers a cancerous lung disease, diagnosed as mesothelioma, and his condition is incurable and terminal.

Defendants each admitted they or their predecessors were manufacturers and suppliers of asbestos products. For the purposes of the case, each defendant was considered responsible for the acts of its respective predecessor.

Each defendant denied plaintiff suffers from any asbestos-related disease. Specifically, defendants denied plaintiff ever had mesothelioma or asbestosis. To the extent plaintiff currently had any lung disease, defendants claimed it was caused in part by smoking tobacco products rather than exposure to asbestos.

Each defendant denied plaintiff inhaled or was otherwise exposed to asbestos particles, fibers, or bodies as a result of working near any of defendants' products. Each defendant contended that to the extent plaintiff was exposed to asbestos-related products, that exposure was the result of actions by or products of others, either others that are parties to this action or those that are not parties.

Defendant Raymark contended plaintiff's exposure, if any, to any product manufactured by it was inconsequential and incapable of causing plaintiff's claimed condition. Raymark also contended its asbestos products were made of only one type of asbestos, i.e., Chrysotile, which is not known to be capable of causing the disease plaintiff contended he contracted from his exposure.

Lastly, defendants contended that at the time of the manufacture and distribution of any of their asbestos products, such manufacture, testing and distribution was consistent with the state of the art at that

time, and therefore no liability should attach to any defendant on any of the claims raised by plaintiff.

On June 10, 1986, following full jury trial, the jury answered certain special interrogatories as follows:

1. Do you find one or more of the defendants supplied asbestos-containing products at plaintiff's workplace?

Yes_x_ No___

2. Do you find that plaintiff was exposed to quantities of asbestos dust from any of defendants' products at his workplace?

Yes_x_ No___

3. Did plaintiff sustain mesothelioma and/or asbestosis, which were substantially caused or contributed to by his exposure to asbestos dust from any of defendants' products at his workplace?

Yes_x_ No___

4. Do you find any of the defendants to be at fault and liable for plaintiff's injuries under either strict liability or negligence?

Yes_x_ No___

5. If you answered "yes" to all of the previous four interrogatories, identify which of the defendants listed below are at fault:

| | | |
|---|---|---|
| Celotex Corp. | Yes _x_ | No ___ |
| Eagle-Picher Industries | Yes _x_ | No ___ |
| Fibreboard | Yes _x_ | No ___ |
| Keene Corporation | Yes ___ | No _x_ |
| Owens-Illinois, Inc. | Yes ___ | No _x_ |
| Raymark, Inc. | Yes _x_ | No ___ |

6. If you answered "yes" to any defendant listed in Interrogatory No. 5, state the amount of plaintiff's damages.

$2,500,000.00

Consistent with the findings of the jury, on June 10, 1986, the court directed the clerk to enter judgment in favor of plaintiff and against defendants Celotex Corporation, Eagle-Picher Industries, Fibreboard, and Raymark Industries, Inc. in the amount of $2,500,000.00, together with interest from that date, and for costs of the action.

Now defendants Celotex, Eagle-Picher, Fibreboard and Raymark have filed their respective motions for judgment notwithstanding the verdict, or in the alternative for new trial, or in the alternative for remittitur. The court has reviewed the motions, the briefs of all counsel, pertinent portions of the trial transcript, trial notes, and memorandums. On August 1, 1986, the court took up extensive oral argument addressing each of the numerous issues raised by these defendants. Following argument, and consistent with findings of fact and conclusions of law announced as to each, all of the defendants' motions were overruled. The court further announced that a supplanted memorandum would issue as quickly as practicable with regard to the court's findings and reasons for imposing the doctrine on alternative liability in this case.

Since the hearing on August 1, plaintiff has moved the court for a hearing in aid of enforcement of judgment, or alternatively, if a stay of execution is entered, for the giving forthwith of a supersedeas bond. Defendants have moved for a stay of execution pending appeal. The court has taken the matter up with counsel by conference call, and consistent with findings made then, execution of the judgment is stayed for 30 days from the filing of this order. A supersedeas bond is not required until such time as defendants timely file a notice of appeal.

## SUPPLEMENTAL MEMORANDUM ORDER

Consistent with the memorandum and order of August 19, 1986, overruling all of the defendants' post-trial motions, I assured the litigants that this memorandum would issue regarding my findings and reasons for imposing the doctrine of alternative liability as contemplated in the Restatement (Second) of Torts § 433B (1965). Before proceeding, however, some history regarding this case is in order.

The court file reflects that the plaintiff, a resident of Nebraska, filed his complaint for recovery of personal injuries by reason of exposure to asbestos, naming as defendants several suppliers of asbestos products. His claim necessarily invoked the compara-

tive fault doctrine of Kansas, and, should his evidence support it, a claim for punitive damages. The case proceeded through the discovery process and in due course reached the jury trial docket. On the very eve of trial, I was confronted with the collective motion of defendants to decide this case under the law of the State of Nebraska. Inasmuch as plaintiff's counsel agreed to the motion, I gave little thought to its significance, sustained defendants' motion, and prepared for trial. At that moment, I had no information with regard to the state of the law in Nebraska other than understanding defendants would claim the doctrine of joint and several liability was involved, as opposed to the concepts of comparative fault. This presented little problem, and I awaited supplemental briefs from the litigants while beginning some initial research. Throughout the entire course of trial, respective counsel for the litigants were of little benefit to me, as all appeared to be in doubt as to the state of the law of Nebraska. The court's research and inquiry into this area was such that I was convinced there simply is no present Nebraska law addressing circumstances similar to those present in this case. I am convinced that as of this moment the Nebraska Supreme Court has not addressed a case such as this, and thus, rather than simply attempt to interpret and apply the present state of Nebraska law, I was required first to identify what is the law of Nebraska.

As this case evolved, these defendants contended it was incumbent upon plaintiff to establish his exposure to a particular defendant's product at a particular time gave rise to his condition. Failing that, plaintiff's case must fall. Defendants' counsel particularly emphasized the requisites of establishing direct and certain evidence that a certain act caused his injury. They repeatedly urged reliance upon *Borland v. Gillespie*, 206 Neb. 191, 292 N.W.2d 26 (1980), which states in part as follows:

> The evidence of damages is required to be *direct and certain. Proof that damage might or could have been caused or was probably caused by the accident is

*not sufficient to sustain a verdict for plaintiff.* Such evidence is not of the quality required to satisfy the burden of a claimant to establish by a preponderance of evidence an injury and the extent thereof. [Citations omitted.] If the evidence of a claimant fails to establish the extent of injury he claims was inflicted upon him, and a jury cannot determine damages except by indulging in speculation and conjecture, then the district court is required to refrain from submitting the matter of damages and to decide the case as a matter of law. [Citation omitted.] *Since Mrs. Borland could not prove what, if any, damages were sustained solely from the first collision, the trial court correctly sustained the motion for directed verdict on the issue of Mr. Gillespie's liability for her personal injuries.*

(Emphasis added.)

Specifically, the defendants urged that plaintiff must prove each defendant's conduct was a proximate cause of his injuries. Plaintiff must prove that each alleged asbestos exposure to a particular asbestos product was a "substantial factor" in causing his injuries and that "but for" the alleged exposure, he would not have developed mesothelioma. Defendants argue that unless plaintiff offers such evidence, it is pure speculation that any individual exposure caused plaintiff's damage. *Pendleton Woolen Mills v. Vending Associates, Inc.*, 195 Neb. 46, 237 N.W.2d 99 (1975).

Our own research convinced me, however, that the Nebraska court also recognizes the doctrine of concurrent negligence. Consistent with the provisions of the Nebraska Jury Instructions Manual, I was satisfied that Instruction No. 14 correctly states the law of Nebraska relating to the establishment of proximate cause. That instruction, as given to this jury, is as follows:

> Where the independent acts or omissions to act of two or more persons combine to proximately cause an injury indivisible in its nature, each such act or omission to act is itself a proximate or

concurrent cause, and any one or more of such persons may be held responsible for the entire injury. This is true even though one may have been more negligent than the other. It is no defense that all those who might have been responsible are not made parties to this action.

Beyond that, however, I was concerned with how to treat the liability of the respective defendants under the following circumstances:

When one or more of the defendants supplied asbestos-containing products to the plaintiff's workplace;

When the plaintiff was exposed to quantities of asbestos dust from the use of defendants' products at his workplace; and

When the plaintiff sustained lung disease caused by his exposure to asbestos dust from use of the defendants' products at the workplace.

The plaintiff's evidence established each of these elements.

■ Where the acts of two or more persons concur producing a single, indivisible injury, such persons are jointly and severally liable, although there was no common duty, common design, or concerted action. *Lindgren v. City of Gering,* 206 Neb. 360, 292 N.W.2d 921 (1980); *see also Gideon v. Johns-Manville Sales Corp.,* 761 F.2d 1129 (5th Cir.1985).

In the quest for some reasonable, workable solution, I recalled the provisions of § 433B(3) of the Restatement (Second) of Torts:

Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon *each such actor* to prove he has *not caused* the harm.

(Emphasis added.) Section 433B(2) provides for the same result where "one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among" the defendants.

The reason for these exceptions "is the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." Restatement (Second) of Torts § 433B, Comment *f* (1965). The illustrations of this principle are instructive:

9. A and B, independently hunting quail, both negligently shoot at the same time in the direction of C. C is struck in the face by a single shot, which could have come from either gun. In C's action against A and B, each of the defendants has the burden of proving that the shot did not come from his gun, and if he does not do so is subject to liability for the harm to C.

10. Over a period of three years A successively stores his furniture in warehouses operated by B, C, and D. At the end of that time A finds that his piano has been damaged by a large dent in one corner. The nature of the dent indicates that it was caused by careless handling on a single occasion. A has the burden of proving whether the dent was caused by the negligence of B, C, or D.

11. While A's automobile is stopped at an intersection, it is struck in the rear by B's negligently driven car. Immediately afterward C's negligently driven car strikes the rear of B's car, causing a second impact upon A's car. In one collision or the other, A sustains an injury to his neck and shoulder. In A's action against B and C, each defendant has the burden of proving that his conduct did not cause the injury.

■ I appreciate that in filling a void in state law, there being no authority from the Nebraska Supreme Court directly on point, I may not merely do what I think best, but rather must do what I think the state's highest court would deem best. *Jackson v. Johns-Manville,* 781 F.2d 394 (5th Cir.1986). To paraphrase the Fifth Circuit:

When making an *Erie* [*R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.

1188 (1938)] guess in the absence of specific guidance from the [Nebraska] Supreme Court, our prediction of state law looks to: (1) lower state court decisions and Supreme Court dicta; (2) the lower court ruling in this case; (3) the general rule on this issue; (4) the rule in other states looked to by [Nebraska] courts when they formulate the substantive law of [Nebraska]; and (5) other available legal sources, such as treatises and law review commentaries.... As Professors Wright and Miller explain:

In vicariously creating state law ..., the federal court may consider all available legal sources, including the Restatements of Law, ... decisions from other jurisdictions whose doctrinal approach is substantially the same, and the "majority rule." *The federal court must keep in mind, however, that its function is not to choose the rule that it would adopt for itself; it must choose the rule that it believes the state's highest court ... is likely to adopt in the future.*

781 F.2d at 397–98 (citations omitted; emphasis in original).

Although not expressly relying on § 433B of the Restatement, the Fifth Circuit recognized the thrust of that exception and applied it to hold multiple defendants in an asbestos case jointly and severally liable for plaintiff's injuries in *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.1973). Applying Texas law, the court stated:

Having concluded that each defendant was the cause in fact of some injury to Borel, we now come to the question of apportionment of damages. In general, a defendant is liable only for that portion of the harm which he in fact caused. A problem arises, however, where, as here, several causes combine to produce an injury that is not reasonably capable of being divided. In the instant case, the trial court resolved this issue by holding the defendants jointly and severally liable for the entire harm. Asserting error, the defendants argue that if the injury cannot be reasonably apportioned, the plaintiff must bear the entire loss unless

it can be shown that the tortfeasors acted in concert or with unity of design. 493 F.2d at 1094. The court acknowledged there was early authority from Texas supporting defendants' arguments, but noted that rule had been overruled by the Texas Supreme Court in *Landers v. East Texas Salt Walter Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731, in which the Texas court announced a new rule:

Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit.

Applying that rule to the *Borel* asbestos case, the Fifth Circuit concluded:

The effect of the *Landers* case may be stated as follows: Where several defendants are shown to have each caused some harm, the burden of proof (or burden of going forward) shifts to each defendant to show what portion of the harm he caused. If the defendants are unable to show any reasonable basis for division, they are jointly and severally liable for the total damages.

493 F.2d at 1095.

More recently, the Fifth Circuit has continued to recognize the theory of alternative liability, but that theory was distinguished and held not applicable to the unique facts of *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581 (5th Cir. 1983). In that case, alternative liability of the multiple defendants was rejected because plaintiff could not recall using the asbestos products of a number of the defendants in the suit.

Also to be distinguished are theories of alternative liability such as those of *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948) (liability imposed on both of two hunters who fired toward plaintiff, burden on each defendant to show he did *not* cause injury), and of group res ipsa

liquitur. *Ray v. Ameri-Care Hospital,* 400 So.2d 1127 (La.App.1981). All of these concern defendants who were proved to have some factual connection with the plaintiff's injury; to apply them to defendants as to which there is no proof of any such connection would beg the question of causation entirely. Like the indivisible injury cases, these shift the burden of proof of causation from the injured plaintiff to those defendants who were connected with it and one or more of whom undoubtedly caused it although, unlike those cases, the result may be that—because of his inability to prove himself innocent—one who in fact contributed nothing to the injury may still be held liable for it. The policy choice underlying such theories seems to be that in the extreme case where one or more of a defined group unquestionably caused an injury and the choice is between exonerating all because the plaintiff cannot show which did so and holding all liable who cannot prove their innocence, the latter result is preferable. Such is not the case here, where a large group of defendants whose products Thompson did recall using remain before the court. These defendants are not members of it.

714 F.2d at 582–83 (emphasis both added and in original). That case is in turn distinguishable from the present one, where plaintiff's evidence shows the asbestos products of *each* of these defendants were present and used in his vicinity at the shipyard job site.

Perhaps most instructive is the court's analysis of the question in *In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740 (E.D.N.Y.1984). *Agent Orange* was a class action by Vietnam service men and women who had been exposed to the toxic herbicide manufactured and commingled by a small number of manufacturers, all of whom were named as defendants. One of the principal legal difficulties faced by plaintiffs was their inability to identify the particular manufacturer of the herbicide to which each plaintiff was exposed. Following an exhaustive analysis of the doctrine of alternative liability in DES and asbestos cases, the court held the *Agent Orange* case was particularly suited for its application:

This case illustrates the inapplicability of burden of proof rules designed for simple two-party cases to mass toxic torts where injury was allegedly caused, but the question of which manufacturer created the harm cannot be answered with precision. Under "traditional" product liability law, to establish a *prima facie* case against any given manufacturer of Agent Orange, a plaintiff would have to prove, by a preponderance of the evidence, the following material propositions: (1) he was injured, (2) the injury was caused by Agent Orange, (3) a defendant had violated some legal duty owed to the plaintiff (as by negligent manufacture of Agent Orange), and (4) the particular Agent Orange causing injury to the plaintiff was manufactured by that defendant.

Plaintiffs concede that because of the way the defendants' herbicides were mixed by the government in Vietnam before spraying no plaintiff would be able to establish the fourth material proposition. As will be seen, this inability is not fatal to their case. Instead, a class of plaintiffs would be able to establish a *prima facie* case by showing, in addition to the first three material propositions, that the manufacturer knew or should have known about the dangers of Agent Orange as it was to be used in Vietnam and that the manufacturer failed to warn the government of those dangers.

Once plaintiffs succeeded in establishing a *prima facie* case, each defendant would assume the burden of establishing the government contract defense. Specifically, a defendant would have the burden of proving one of two material propositions to establish the defense: either that (1) the government knew as much or more of the dangers of Agent Orange as that defendant knew or should have known, or, alternatively, that (2) even if the government had had the knowledge, it would have continued to buy or produce Agent Orange of the same toxicity

as that manufactured by defendants and would not have taken steps to reduce Agent Orange hazards to servicepersons. If a defendant failed to establish the government contract defense, it could nonetheless escape liability by showing that its product could not have caused the plaintiffs' injury or, alternatively, that it should only be responsible for a proportion of the damage.

597 F.Supp. at 819–20. The court noted the alternative liability theory had been adopted for the situation where two or more defendants have breached a duty of care to plaintiffs, but it is impossible to determine, as to an individual plaintiff, which defendant caused the injury. Under § 433B of Restatement,

> when all defendants, although acting independently, have breached a duty of care toward the plaintiff but only one of them caused the plaintiff's injury, the burden of proof shifts to each defendant to prove that he or she did not cause the injury. Failure to meet that burden results in joint and several liability with other defendants. The logic is simple and compelling: "as between an innocent plaintiff and negligent defendants, the latter should bear the cost of the injury."
>
> . . .
>
> . . . Once plaintiff proves a breach of duty on the part of a defendant, that defendant is jointly and severally liable for the entire harm suffered by plaintiff and *plaintiff need not prove what portion of the total damage, if any, was caused by defendant.*
>
> *       *       *       *       *       *
>
> . . . In the mass tort cases, . . . dropping the requirement that a plaintiff identify a particular defendant as the cause in fact of his injuries does not undermine the principle that a defendant should only be held responsible for the damage it caused. As long as a plaintiff can prove general causation, i.e., that he was injured by the type of product or substance manufactured by defendants, and as long as there is a rational method for determining the percentage of the total harm caused to all those damaged

by each of the possible defendants, the principle remains intact.

*       *       *       *       *       *

The Florida Third District Court of Appeals in *Copeland v. Celotex Corp.,* 447 So.2d 908 (Fla.App.1984), held that a plaintiff who developed asbestosis need only show that he was exposed to asbestos products in general and join as defendants a substantial number of asbestos manufacturers who marketed asbestos products during the time of his exposure. Liability would be apportioned on the basis of national market share.

Federal courts have split in making *Erie*-based predictions as to whether their forum state's courts would adopt an alternative liability or market share theory. . . .

[But] [n]one of the courts rejected alternative liability when all the defendants were before the court. . . .

597 F.Supp. at 822–26 (emphasis added; citations omitted). The court rejected the *Agent Orange* defendants' challenges to the application of alternative liability in that case, concluding:

> As indicated in this opinion, IV, C, Nature of Liability and Relation to Defense of Government Knowledge, *infra,* the applicable rule of substantive law *in this class action* is as follows: if a plaintiff established that it is more probable than not that (1) he or she was injured, (2) the injury was caused by Agent Orange, (3) a defendant knew or should have known about the dangers of Agent Orange, whether manufactured by it or by a co-manufacturer, as it was to be used in Vietnam and failed to warn the United States of those dangers, and (4) the defendant manufactured and sold to the United States Agent Orange to which plaintiff might have been exposed, *then* that defendant would be jointly liable for the damage suffered by the plaintiff, *unless* the defendant established that it is more probable than not that (5) the Agent Orange it sold to the United States could not have caused the injury (*e.g.,* because it contained no harmful

substance). If a defendant could not prove (5), it might nonetheless escape liability if it could show either that (6) the United States knew as much as it knew or should have known about the dangers of Agent Orange or (7) even if the United States had known as much as that defendant knew or should have known, it would have nevertheless produced or continued to buy Agent Orange of the same toxicity as that supplied by defendant and would not have taken steps to reduce its hazards to the plaintiff.

If a plaintiff succeeded in establishing a *prima facie* case and a defendant failed to establish any of material propositions five through seven, that defendant would be jointly and severally liable with all other defendants similarly situated unless it could show why it should only be liable for a portion of the damage (*e.g.*, because of the percentage of Agent Orange supplied or the relative purity of its product) and, thus, should pay only a proportion of plaintiff's damages.

*Id.* at 833.

As indicated earlier, there is no Nebraska authority accepting or rejecting alternative liability of multiple defendants whose products caused a single, indivisible injury to plaintiff. Under *Erie,* we are required to determine in our best judgment the direction we believe the Nebraska Supreme Court would take if presented with the question.

The most closely analogous case our research has divulged is *Osteen v. A.C. and S., Inc.,* 209 Neb. 282, 307 N.W.2d 514 (1981). *Osteen* was a workmen's compensation case brought by a claimant who suffered mesothelioma after exposure to asbestos products during his employment with a number of different employers, each of whom were named as respondents. One of the significant questions on appeal was the issue of which employer was liable given claimant's failure to prove with specificity which exposure proximately caused his injuries. The Nebraska Supreme Court stated:

[T]here is no doubt that the disease which caused Mr. Osteen's death is an occupational disease which afflicts asbestos workers. However, it is almost impossible to pinpoint which exposure "caused" the disease, since the claimant's expert medical witness agreed that no exposure could be exonerated as the cause of the tumor. Thus, we are unable to assign liability to the employer whose exposure of Mr. Osteen to asbestos "caused" his occupational disease, since the inception of the disease cannot be pinpointed, and additionally, since it is believed that cumulative exposures are harmful as well.

The Nebraska Supreme Court adopted the "last injurious exposure rule," holding liable the last employer who exposed claimant to asbestos.

The last injurious exposure, to be "injurious", must indeed bear a causal relationship to the disease. However, ... this means simply that the exposure must be of the type which could cause the disease given prolonged exposure. As described in *Mathis v. State Accident Insurance Fund,* 10 Or.App. 139, 499 P.2d 1331 (1972), an exposure which will support imposition of liability under this rule need not be proved to have been a "material contributing cause" of the disease. Indeed, to so require would bring the employee back to Square One by requiring *"proof of the unprovable and litigation of the unlitigable."* ... "Once the requirement of some contributing exposure has been met, courts ... will not go on to weigh the relative amount or duration of the exposure under various employers.... As a result, in some cases carriers and employers that have been on the risk [sic] for relatively brief periods, perhaps only a few weeks, have nevertheless been charged with full liability for a condition that developed over a number of years." As noted by the Workmen's Compensation Court in ... this case, "[E]ven though liability imposed under this rule can have a harsh result, there will be a spreading of risk when the total picture of asbestos litiga-

tion is considered and this rule is applied on a nationwide basis."

(Emphasis added.)

To conclude, the Nebraska Supreme Court expressly held in *Lindgren v. City of Gering, supra,* that multiple tortfeasors who combine to cause a single, indivisible injury to a plaintiff are jointly and severally liable. The *Osteen* discussion of asbestos exposure and injuries indicates the Nebraska Supreme Court is well aware of the significant problems of proof an injured asbestos worker faces in establishing causation, which under traditional tort principles would require "proof of the unprovable and litigation of the unlitigable." The fact *Osteen* was a workers' compensation case concerning *employer* liability is a distinction without a difference. The material issues of causation and liability among numerous defendants in an asbestos case were the focus of the *Osteen* decision, just as they are in this case, and the breadth of the Nebraska Supreme Court's language in *Osteen* leaves little doubt about that court's perspective on these issues. Notably, both *Lindgren* and *Osteen* were decided *after* the *Borland v. Gillespie* case which defendants trumpet so loudly, and the direction of the evolution of Nebraska law lies in plaintiff's favor, not defendants'. Finally, in appropriate and very similar asbestos cases where all the defendants are before the court, the Fifth Circuit and other courts have not hesitated to apply the doctrine of alternative liability, shifting the burden of proving *lack of causation* to the defendants upon plaintiff's threshold proof of exposure and resulting injury.

There is no question that in minor detail the present case is somewhat different in its posture. It is not a class action as was the *Agent Orange* case. Further, not all manufacturers whose products were used at the shipyard where plaintiff worked are now before the court. But the fact the bankrupt manufacturers are absent is not plaintiff's fault, nor is it his fault the asbestos products were commingled at the workplace and he is incapable of identifying which he was exposed to at a particular time. The conclusion is inescapable: this is a case between an entirely innocent plaintiff and negligent defendants, in which the law of the State of Nebraska would clearly lay the loss with the latter.

■ From the foregoing survey of Nebraska law, the Restatement, and authorities from other jurisdictions, in executing my responsibilities under *Erie* I can state with confidence that were the Nebraska Supreme Court presented with the question in this case, it would adopt the doctrine of alternative liability. Under this doctrine, plaintiff made a *prima facie* showing of defendants' liability from evidence of his exposure to defendants' asbestos products and resulting injury. With that satisfied, the burden should and did shift to the individual defendants to prove their products were not significant contributing causes of plaintiff's injuries. Having failed in that proof, they are, under Nebraska law, jointly and severally liable to plaintiff.

As the file reflects, the jury was instructed consistent with these findings and conclusions, and as indicated in my comments from the bench at the time of hearing on the respective motions of defendants, and now stated here, the defendants' motions should be and are overruled.